63 F.3d 754
 42 Fed. R. Evid. Serv. 1309
 FIREMEN'S FUND INSURANCE COMPANY, Appellee,
The Fidelity and Casualty Company, of New York, Plaintiff,
v.
Michael THIEN; M. Ellen Bigge, ad litem for Matthew T.
Davis, Deceased, Defendants,
Kenneth D. Benedict; Hallowgene Benedict; Chad Benedict, Appellants.
 No. 94-2764.
 United States Court of Appeals, Eighth Circuit.
 Submitted April 10, 1995.
 Decided Aug. 22, 1995.
 
 Robert F. Fisher, argued, Independent, MO (William C. Hopkins, Ronald J. Stites, and Steven L. Hobson, on brief), for appellant.
 John W. Cowden, argued, Kansas City, MO (Peter F. Travis, on brief), for appellee.
 Before MAGILL and HANSEN, Circuit Judges, and GOLDBERG,* Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Decedent Charles Benedict's survivors appeal from a final judgment entered by the district court[1] upon a jury verdict in this action seeking declaratory judgment resolving the insurance coverage of defendants in a state court wrongful death action. They challenge four evidentiary rulings at trial.
 
 I. BACKGROUND
 
 2
 On September 11, 1989, a small aircraft, en route from Kansas City, Missouri, to Springdale, Arkansas, crashed near Bentonville, Arkansas. The airplane was owned and operated by Mid-Plains Corp., an air courier business based in Kansas City, and both the pilot, a Mid-Plains employee, and the passenger, Charles Benedict, were killed. Benedict was associated with Mid-Plains as an employee who ran errands and did "odd jobs" for the company, reporting to Michael Thien, director of operations.
 
 
 3
 Benedict's parents, Kenneth and Hallowgene Benedict, and his son, Chad Benedict (the Benedicts), brought a wrongful death action in a Missouri circuit court against Mid-Plains, Thien, and Richard Lund, defendant ad litem for the pilot.[2] Mid-Plains was dismissed from the suit, and Benedict's widow and other son, Martina and Chris Benedict, did not join the suit.
 
 
 4
 Firemen's Fund Insurance Company, Mid-Plains' liability insurer, denied coverage to Thien and Lund because, at the time of the accident, Benedict was a Mid-Plains employee acting within the scope of his employment and thus fell under an exclusionary clause in the liability policy. Subsequently, Firemen's Fund brought an action against Thien and Lund in federal district court seeking declaratory judgment that the exclusionary clause applied to liability coverage of Thien and Lund for Benedict's death. The Benedicts intervened as defendants.
 
 
 5
 The exclusionary clause states that the policy does not apply:
 
 
 6
 to bodily injury to any fellow employee of the Insured injured in the course of his employment if such injury arises out of the use of the aircraft in the business of his employer, but this exclusion does not apply to the Named Insured [Mid-Plains] with respect to injury sustained by any such fellow employee.
 
 
 7
 I Appellant's App. at 49. Thien and Lund, as the "Insured," are therefore not covered under this policy if Benedict was an employee of Mid-Plains at the time of the accident, and if Benedict was on the airplane acting within the scope of his employment. See Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir.1993).
 
 
 8
 The district court granted Firemen's Fund's motion for summary judgment based on evidence that Benedict was an employee acting within the scope of his employment at the time of the accident. Thien and Lund appealed to this Court, and the panel found that there was an issue of material fact as to whether Benedict was acting within the scope of his employment when the accident occurred. The panel reversed the judgment of the district court and remanded the case for trial. Id. at 1309.
 
 
 9
 The parties agreed that Benedict was a Mid-Plains employee until at least August 31, 1989, but at trial presented conflicting evidence as to his status at the time of the accident. Conflicting evidence was also presented as to whether Benedict was traveling on the Mid-Plains airplane for business or personal purposes. After trial, the jury found that Benedict was an employee acting within the scope of his employment when the accident happened, and that Firemen's Fund therefore was not obliged to indemnify Thien and Lund for any liability arising from Benedict's death. The Benedicts now appeal.
 
 II. DISCUSSION
 
 10
 The Benedicts argue that the district court erred in four separate evidentiary decisions. First, they argue that the district court erred in admitting Firemen's Fund's documentary evidence that Benedict was paid through September 15, 1989. The Benedicts contend that this evidence was inadmissible hearsay and prejudicial. Second, the Benedicts argue that the court erred in excluding their evidence of Federal Aviation Administration (FAA) reports following FAA investigation of Thien, contending that this evidence was relevant character evidence. Third, they argue that the court erred in excluding hearsay testimony that Benedict had said he was about to be laid off from Mid-Plains, and that he was traveling for personal reasons. Last, they argue that the court erred in excluding evidence that Firemen's Fund witnesses Martina and Chris Benedict were under the control or influence of Thien, due to their membership in a small church group led by Thien.
 
 
 11
 We review the district court's rulings admitting or excluding evidence for abuse of discretion. E.I. duPont de Nemours v. Berkley & Co., 620 F.2d 1247, 1272 (8th Cir.1980).
 
 
 12
 A. Admission of September 15 Paycheck and Payroll Documents
 
 
 13
 Firemen's Fund introduced, and the court admitted, a paycheck issued to Benedict for the pay period of September 2 to September 15 and supporting documents as evidence that he was a Mid-Plains employee at the time of his death. The Benedicts argue that the paycheck and supporting documents were not admissible under the business records exception to the hearsay rule. We disagree.
 
 
 14
 Rule 803(6) of the Federal Rules of Evidence states, in relevant part, that:
 
 
 15
 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodial or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
 
 
 16
 Fed.R.Evid. 803(6). Firemen's Fund introduced the paycheck and supporting documents, reflecting tax withholdings, during the direct examination of the secretary, Julie Guichot, responsible for recording employees' hours worked. Further foundation was established during the direct examination of the payroll administrator, Robyn Seabolt, who, upon communication of the time worked by employees from Guichot, issued paychecks and generated backup records for the payroll. Both Guichot and Seabolt testified that they had received no notification, oral or written, of any change in Benedict's employment status until his death: the final paycheck was issued payable to "the Estate of Charles Robert Benedict."
 
 
 17
 The paycheck and supporting documents were issued in the regular course of business by the people who ordinarily issued them. Guichot ordinarily compiled records of time worked by Mid-Plains employees, and ordinarily communicated this first-hand information to Seabolt, who issued paychecks. Both of them testified regarding the paycheck and supporting documents, and both of them testified that they had received no notification that Benedict was no longer employed by Mid-Plains.[3] Had Benedict been laid off by Mid-Plains prior to the accident, it is reasonable to believe that Guichot or Seabolt would have been notified, as they ordinarily were in the case of firing or lay-off, as the people responsible for payroll records.[4]
 
 
 18
 The paycheck and supporting documents clearly fall within the exception to the hearsay rule stated in Rule 803(6), and the Benedicts' arguments to the contrary go not to the admissibility of the evidence, but to the credibility of the witnesses: evidence that the Benedicts were free to present to the jury through cross-examination. We find that the district court did not abuse its discretion in admitting the paycheck and supporting documents.
 
 B. Exclusion of the FAA Reports
 
 19
 The Benedicts argue that the court erred in excluding reports of FAA investigations of Thien, which indicate that Thien did not perform his duties as pilot logbook keeper accurately and allege that he intentionally falsified some logbook entries. The Benedicts contend that these reports indicate general sloppiness or deceptiveness in Mid-Plains' record keeping, and thus that they should have been admitted to show the untrustworthiness of the payroll records discussed in part A, supra.
 
 
 20
 The records deemed unreliable by the FAA are unrelated to the records the Benedicts seek to challenge. The Benedicts seek to challenge payroll records kept by Guichot and Seabolt; the FAA reports concern flight log records kept by Thien. The Benedicts argue that the FAA reports showing that a single flight log kept by Thien was inaccurate[5] should have been admitted to show that all Mid-Plains records were inaccurate.
 
 
 21
 Under Rule 401 of the Federal Rules of Evidence, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. However, under Rule 403 of the Federal Rules of Evidence, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.
 
 
 22
 The FAA reports are evidence of only marginal probativity in this case. They concern allegations of intentional falsification of airman's logs relevant to the safety of Mid-Plains' flights, and relate to this case only as regards the possible cause of the accident in which Benedict died, and whether Thien may have been at fault. The Benedicts argue that the falsification of the airman's logs is relevant to show the untrustworthiness of Mid-Plains' and Thien's record keeping as a whole, and as extrinsic evidence contradicting Seabolt's testimony that the payroll records were accurate. This attenuated relevance is not sufficient to outweigh the unfair prejudice, confusion, and waste of time likely to result from the admission of this evidence. Thien's alleged falsification of airman's logs has no direct bearing on the accuracy of payroll records and this evidence does not "contradict" Seabolt's testimony that she kept the payroll records accurately in the ordinary course of business. See United States v. Lopez, 979 F.2d 1024, 1034 (5th Cir.1992) (extrinsic evidence is material if it contradicts witness's account of a material transaction which he would not have been mistaken about if his story were true), cert. denied, --- U.S. ----, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993).
 
 
 23
 " 'Unfair prejudice' [under Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." United States v. Dennis, 625 F.2d 782, 796-97 (8th Cir.1980) (internal quotations omitted); see Lopez, 979 F.2d at 1034 (material extrinsic evidence subject to exclusion if prejudice outweighs probativity). The evidence the Benedicts seek to admit presents a strong likelihood of unfair prejudice: the issue before the jury was whether the potential liability of Thien and Lund was covered by insurance, not whether they were in fact liable in any way for Benedict's death. The sole question underlying the issue was whether Benedict was an employee acting in the scope of his employment when he died. The documentary and testimonial evidence resulting from the FAA investigation of Thien is directly related to Thien's possible fault in the crash, and very likely would cause a jury to feel hostility toward Thien, contributing to a verdict based not on the evidence regarding Benedict's employment status, but on Thien's fault in the crash. Further, the FAA investigation pertains directly to a collateral issue in this case: Was Thien liable for Benedict's death? Admission of FAA evidence would lead to extended, and irrelevant, litigation of the question of Thien's liability, and thus would confuse the jury and waste their time and the court's. We therefore find that the FAA evidence was properly excluded under Rule 403, because the likelihood of unfair prejudice, confusion, and waste of time outweighs the probativity of that evidence.
 
 
 24
 Moreover, admission of this evidence to show the general untrustworthiness of Mid-Plains' and Thien's record keeping is in violation of Rule 404(b) of the Federal Rules of Evidence:
 
 
 25
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 26
 Under this rule, the evidence is not admissible to show, by implication from the falsification of airman's logs, that the payroll records were also false. The Benedicts, however, argue that the FAA evidence is admissible under Rule 404(b) as proof of Thien's motive to falsify the payroll records. They contend that the fact that Thien was under investigation by the FAA gave him a motive to falsely claim that Benedict was an employee at the time of the crash, because FAA regulations forbid the presence of nonemployees on single-engine planes under the weather conditions at the time of the crash.
 
 
 27
 Admissibility under Rule 404(b) is contingent upon admissibility under Rule 403, discussed supra. "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Fed.R.Evid. 404(b) advisory committee's notes; see United States v. Peltier, 585 F.2d 314, 321 (8th Cir.1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). We have determined that the danger of undue prejudice resulting from this evidence outweighs the probative value of the evidence, and it is no more admissible under Rule 404(b) than it is under Rule 403.
 
 
 28
 The Benedicts' theory regarding motive was also adequately presented to the jury without the introduction of the prejudicial evidence. Regardless of whether Thien was under investigation by the FAA, it would be a violation of FAA regulations for a nonemployee to have been on the flight, and the Benedicts argued that this provided Thien with a motive to falsify Benedict's employment status.[6] We find that the district court did not abuse its discretion in excluding the FAA evidence under Rule 404(b).
 
 
 29
 Finally, the Benedicts argue that the FAA evidence should have been admitted as evidence of Thien's untruthful character under Rule 608(b). Rule 608(b), in part, states that:
 
 
 30
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
 
 
 31
 The FAA allegations that Thien falsified the airman's logs may be probative of Thien's truthfulness or untruthfulness, but the decision whether to admit this evidence on cross-examination is within the discretion of the district court, and is subject to the limitations of Rule 403. See Fed.R.Evid. 608(b) advisory committee's notes. We have determined that the prejudicial impact of this evidence outweighs its probativity, and this determination holds true for the probativity of the FAA allegations as regards Thien's truthfulness or untruthfulness. We note that, although this evidence can be characterized as probative of Thien's untruthfulness, it is far more pertinent to the question of Thien's possible fault in the crash. The unfair prejudice and jury confusion likely to result from the introduction of this evidence far outweighs its minor probativity to Thien's general character for untruthfulness.
 
 
 32
 We, therefore, find that the district court did not abuse its discretion in excluding the documentary and testimonial evidence resulting from the FAA's investigation of Mid-Plains' safety procedures.
 
 C. Exclusion of Hearsay Testimony
 
 33
 Next, the Benedicts argue that the district court erred in excluding the hearsay testimony of several witnesses who had heard Benedict say that he had been or was going to be laid off from his employment at Mid-Plains. The court admitted the testimony of two such witnesses, Patrick Benedict and John Twitty. Patrick's admitted testimony also included Benedict's statement that he was flying to Springdale for a vacation and to study for his pilot's license.
 
 
 34
 The Benedicts argue that the testimony of the remaining witnesses was admissible under Rule 803(3) as "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed...." Fed.R.Evid. 803(3).[7] We find, however, that the statements the Benedicts seek to have admitted are offered to prove the fact remembered or believed, not to show Benedict's state of mind. Excepting one, which we will discuss briefly below, each statement consists of Benedict's stating that he had been or was about to be laid off. These are statements of memory or belief, not of emotion or intent, and the only purpose for which the Benedicts can reasonably be introducing these statements is to prove that Benedict had, in fact, been laid off before the crash, and was therefore not a Mid-Plains employee at the time of the crash. Such statements are not admissible under Rule 803(3), and the district court did not abuse its discretion in excluding the testimony of these witnesses.
 
 
 35
 The one statement that, from the record before us, appears to be properly admissible under Rule 803(3) is that of Chad Benedict, who had been told by Benedict that he intended to study for his pilot's license and build flying hours during his time off. See Firemen's Fund, 8 F.3d at 1313. This statement, however, merely repeats, with less specificity, Patrick Benedict's testimony admitted by the court, and its exclusion was harmless error.
 
 
 36
 D. Exclusion of Evidence of Witnesses' Religious Beliefs
 
 
 37
 Finally, the Benedicts argue that the district court erred in excluding evidence of Martina and Chris Benedict's religious beliefs, offered to show that Martina and Chris were biased witnesses. Martina and Chris were both members of "Zion's Endeavor," a religious group of which Thien was the pastor.
 
 
 38
 Under Rule 610 of the Federal Rules of Evidence, "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced." However,
 
 
 39
 [w]hile the rule forecloses inquiry into the religious beliefs or opinions of a witness for the purpose of showing that his character for truthfulness is affected by their nature, an inquiry for the purpose of showing interest or bias because of them is not within the prohibition. Thus disclosure of affiliation with a church which is a party to the litigation would be allowable under the rule.
 
 
 40
 Fed.R.Evid. 610 advisory committee's notes. The court admitted testimony that the church consisted of "a group of folks who met in [Thien's] basement, about 30 people...." II Trial Tr. at 279. The court further admitted testimony that Chris and Martina were members of the church of which Thien was the pastor, and that Chris worked for a company owned by Thien and was "close" to Thien. II Trial Tr. at 364-65, 404. This evidence was properly admitted for the purpose of showing that Chris and Martina may have been biased in favor of Thien through their religious affiliation with him.
 
 
 41
 The evidence excluded by the court, however, was not probative of Martina's and Chad's bias in favor of Thien. All of the evidence cited in appellant's brief as improperly excluded under Rule 610 concerns a specific tenet of Zion's Endeavor that participation in civil litigation is in violation of biblical law. The Benedicts proposed to introduce testimony regarding this specific tenet as the reason why Martina and Chris were not parties to the state court wrongful death action brought by the Benedicts, and why Chad delayed in joining that action. Appellant's Br. at 28-30. We fail to see the relevance of this issue to the instant case, and we fail to see how showing that Martina and Chris had religious reasons to decide not to join the wrongful death action shows that they were biased witnesses in the insurance action. The fact that Martina and Chris were members of a small religious group led by Thien, and that met regularly in Thien's basement, was before the jury. This fact is probative of bias, and was admitted. The reasons why Martina and Chris did not join the wrongful death action, and why Chad was late in joining, do not add to a showing of bias, and appear to us to be an attempt to undermine Martina's and Chris's credibility, and to prejudice the jury against them, by painting them as religious extremists.
 
 
 42
 The district court did not abuse its discretion in excluding detailed examination of the nature of Martina and Chris Benedict's religious beliefs.
 
 III. CONCLUSION
 
 43
 For the above reasons, we find that the district court did not abuse its discretion in admitting or excluding evidence, and we affirm the judgment of the district court.
 
 
 
 *
 THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri
 
 
 [2]
 Lund has since been replaced by M. Ellen Bigge as defendant ad litem
 
 
 [3]
 Guichot was on vacation from September 1 until September 11, but, upon her return, no message or information awaited her stating that Benedict was no longer employed by Mid-Plains. There is some question on the record as to whether Benedict became a "part-time" as opposed to a "full-time" employee during the period before his death. It is a credibility issue for the factfinder whether part-time status altered Benedict's status as an "employee" for insurance purposes
 
 
 [4]
 The Benedicts argue that the fact that the final paycheck included pay through the end of the two-week pay period indicates that the paycheck was intended to manipulate litigation. Firemen's Fund asserts that the check included pay through the end of the pay period because Mid-Plains felt that it would be appropriate to show generosity to Benedict's widow and children, given the circumstances of his death. This is a credibility issue, and the Benedicts had the opportunity to make this argument to the jury; we think that Firemen's Fund's explanation is credible, and worthy of credit given it by the jury
 
 
 [5]
 FAA and Thien came to a settlement that a single incident in which Thien intentionally misrecorded the flight record of one pilot exposed Thien to liability. Any remaining claims by the FAA that Thien falsified flight logbooks was settled by a stipulation that any other pilot logbook records kept by Thien were accurate, and no legal action would be taken against Thien based on the logbook records
 
 
 [6]
 We also note that the Benedicts' argument regarding motive cuts both ways. Thien was under investigation by the FAA before the crash, and this could provide a motive for Thien to adhere with special care to all FAA regulations, since he knew that they were watching
 
 
 [7]
 The Benedicts also argue that these statements are admissible under Rule 804(b)(3) as statements against pecuniary interest, and under Rules 803(24) and 804(b)(5), which provide "catch-all" exceptions to the hearsay exclusion. We do not find these arguments compelling. We also do not examine the testimony of Louise Benedict under the hearsay exceptions, because this witness was not identified to defendants until four days before trial, and was properly excluded from testifying