# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3312

_____

United States of America

*Plaintiff - Appellee*

v.

Donald Boman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 24, 2015
Filed: January 7, 2016

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Donald Boman (Boman) of possessing a firearm and ammunition as a felon. The district court[1] sentenced him to 262 months in prison. On appeal, Boman argues the district court committed five reversible errors: the court improperly (1) excluded the introduction of "reverse" Federal Rule of Evidence

_____

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

404(b) evidence relating to a criminal conviction of the victim, Marcus Brown (Brown); (2) excluded, under Federal Rule of Evidence 403, evidence relating to proof of Brown's motive and bias against Boman; (3) admitted Brown's 911 phone call under the excited-utterance exception of Federal Rule of Evidence 803(2); (4) classified Boman as an Armed Career Criminal under 18 U.S.C. § 924(e); and (5) applied a four-level enhancement under USSG § 2K2.1(b)(6)(B) after determining Boman possessed a firearm in connection with the Iowa felony offense of Intimidation with a Dangerous Weapon. We affirm.

## I. Facts and Procedural History

On November 2, 2013, Cedar Rapids Police Officers responded to a 911 call regarding a shooting. Once the officers arrived at the scene of the shooting, Officer Zach Jeffries spoke with Brown, who was walking across the street and "thought he had been shot." After conducting a pat-down of Brown, Officer Jeffries determined Brown had not been shot nor did Brown have any weapons.

Next, Officer Jeffries spoke with witnesses at the scene of the incident. From those conversations, Officer Jeffries learned the suspected shooter, Boman, was located inside the residence at 1800 Ridgewood Terrace Southeast. Sergeant Steven Yardly contacted Boman, and Boman walked out of the residence. Officer Jeffries then handcuffed Boman and placed him in the back of his squad car.

Jamie Cooper, Boman's girlfriend, lived with Boman and arrived at the scene shortly thereafter. At that time, Cooper consented to the police officers' search of her home. During the search, Cooper was cooperative and directed the officers to her bedroom dresser, which is where she said a firearm would be located. Cooper shared the bedroom with Boman. The officers located the firearm and two boxes of ammunition. One box contained fifty rounds of ammunition and the other box

contained forty rounds of ammunition. The magazine in the firearm was missing one round.

Cooper's daughters, Cheyenne Cinkan and Jade Hasson, also lived at the residence, along with Cinkan's children. Cinkan had recently moved to the residence shared by Boman and her mother, Cooper, to avoid living with her boyfriend, Brown. This is because Brown physically abused Cinkan. In fact, earlier on November 2, 2013, Brown and Cinkan got into an argument at Boman's and Cooper's home. Soon thereafter, an argument ensued between Boman and Brown.

Sarah Michaels testified to witnessing the altercation. She said it involved two African American men, one taller than the other. The shorter man yelled from across the street, "Do it nigger! Do it nigger!" A taller African-American man then ran across the street, hit the other man, reached for his hip, and pointed his hand at the man on the ground. Michaels then heard a pop noise.[2] Michaels and Cinkan called 911 following this incident. After Cinkan handed Brown the phone, Brown reported to the 911 dispatcher that "Donnie" had shot at him.

On March 18, 2014, a grand jury returned a one-count superseding indictment against Boman charging him with unlawfully possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Following a two-day jury trial, the jury found Boman guilty of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). Ultimately, the district court sentenced Boman to 262 months, at the bottom of his 262- to 327-month advisory guideline range.

---

[2] Two other witnesses testified at Boman's trial that they heard a single loud noise on the afternoon of November 2, 2013.

## II. Discussion

"We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Webster, 797 F.3d 531, 537 (8th Cir. 2015) (quoting United States v. Espinoza, 684 F.3d 766, 778 (8th Cir. 2012)). In reviewing evidentiary rulings, "we afford deference to the district judge who saw and heard the evidence." United States v. Donnell, 596 F.3d 913, 919 (8th Cir. 2010) (quoting United States v. Espinosa, 585 F.3d 418, 430 (8th Cir. 2009)).

In addition, "[w]e review de novo whether a prior conviction is a predicate offense under the [Armed Career Criminal Act (ACCA)]." United States v. Abbott, 794 F.3d 896, 897 (8th Cir. 2015) (per curiam) (quoting United States v. Humphrey, 759 F.3d 909, 911 (8th Cir. 2014)). Where a defendant fails to raise an objection, such as to the district court's allegedly wrongful classification of the defendant's prior convictions as violent felonies under the ACCA, we review for plain error. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005).

### A. Inadmissible Reverse 404(b) Evidence

Prior to trial, Boman sought to introduce Brown's prior convictions under Rule 404(b) to show that Brown, not Boman, possessed the firearm. The government sought to introduce Boman's prior convictions. The district court held that neither party could introduce such evidence because the prior convictions were too remote in time and violated Rule 403. On appeal, Boman argues the district court abused its discretion in excluding the reverse 404(b) evidence relating to Brown's prior convictions because the district court misapplied the four-factor 404(b) test adopted by the Eighth Circuit Court of Appeals. According to Boman, Brown's prior

convictions "were sufficiently proximate to this incident and their introduction bore little risk of confusing the issues, misleading the jury or wasting court time."

Under Rule 404(b), evidence of other "[c]rimes, [w]rongs, or [o]ther [a]cts," are admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) evidence is typically introduced by the prosecution to help prove the defendant guilty of the charged crime." United States v. Battle, 774 F.3d 504, 512 (8th Cir. 2014). By contrast, "'[r]everse 404(b)' is a term some courts have used to refer to evidence of prior bad acts by a third party, introduced by the defendant and offered to implicate the third party in the charged crime." Id. In determining whether to admit Rule 404(b) (or reverse 404(b)) evidence, courts are directed to consider whether the evidence is: "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." Id. at 513 (quoting United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005)).

This Court has expressed its reluctance to uphold the admission of evidence of prior offenses occurring more than 13 years prior to the charged offense. See United States v. Strong, 415 F.3d 902, 905 (8th Cir. 2005). However, it has "approved the admission of prior firearm convictions under Rule 404(b) where more time separated the prior offense and the charged offense." See United States v. Halk, 634 F.3d 482, 487 (8th Cir. 2011) (citing United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006) (eighteen years separated the prior and charged offense); Strong, 415 F.3d at 906 (sixteen years separated the prior and charged offense)). In Halk and Walker, this Court was persuaded that 19-year-old and 18-year-old convictions were not so remote in time as to render them inadmissible because the defendants spent significant periods of time in prison between their offenses. See Halk, 634 F.3d at 487 (12 years of incarceration); see also Walker, 470 F.3d at 1275 (10-year period of incarceration).

Here, the district court did not abuse its discretion when it excluded the evidence of Brown's and Boman's prior convictions.[3] In its pre-trial order, the district court recognized that the "potential prejudice is lessened when a defendant offers 404(b) evidence pertaining to a third party." The court, nevertheless, held that Brown's prior convictions were inadmissible under reverse 404(b) for the same reasons Boman's prior convictions were inadmissible under Rule 404(b). Brown's 1993 conviction was too remote in time to be admitted under reverse Rule 404(b); it occurred approximately 21 years prior to the charged offense. Relying on Walker, the district court also ruled that Boman's 1992 conviction was too remote. Boman presented no evidence that Brown was incarcerated for a significant period of time after his 1993 offense. Without such evidence, Brown's 21-year-old conviction goes beyond the limits of Rule 404(b) admissibility established by Strong, Walker, and Halk. In addition, Brown's 2012 conviction of burglary in the third degree was not "similar in kind" to his alleged conduct nor was it logically connected for the purposes Boman sought to use it because his 2012 conviction did not refer to a firearm possession. Thus, the district court did not abuse its discretion in denying the admissibility of the reverse 404(b) evidence.

## B. Inadmissible Proffered Defense Evidence As to Collateral Disputes

On the morning of the second day of trial, defense counsel sought to present evidence of Brown's motive and bias against Boman. To do so, defense counsel proposed to elicit testimony from Officer Antoine Smith about whether Cinkan had a black eye on the day of the incident and whether Brown gave her that black eye. The district court ruled Officer Smith's testimony was inadmissible because the trial was not a "domestic abuse trial" or an "assault trial," and "[a]ny relevance this has is

---

[3] In 1992, Boman was convicted of two counts of using a firearm during the commission of a violent crime and one count of robbery. In 1995, Boman was convicted of assault within maritime and territorial jurisdiction. In 1993, Brown was convicted of armed violence and aggravated battery with a firearm. In 2012, Brown was convicted of burglary in the third degree.

outweighed by getting into things that are not relevant, that take time and are kind of a collateral matter."

Additionally, defense counsel sought to ask Hasson, Cinkan's sister, about the subject matter of Cinkan's and Brown's argument on the day of the incident. Namely, defense counsel argued that Brown planned to steal Cinkan's government assistance funds. The district court stated that Boman's theory was "farfetched" and, "[t]o the extent it has any relevance at all, it's outweighed by waste of time, collateral matter."

On appeal, Boman argues the district court erred in excluding the above testimony under Rule 403. Boman further contends the evidence was relevant and there was no danger of confusing the issues, misleading the jury, or causing undue delay or undue prejudice to the government. According to Boman, Brown was biased against Boman because Boman sought to prevent Brown from abusing Cinkan and taking her government assistance funds. Thus, Boman contends, Brown had a motive to fabricate charges against Boman. Boman further argues that the district court's decision to prevent him from introducing evidence of Brown's motive and bias against Boman was an abuse of discretion.

Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." United States v. Condon, 720 F.3d 748, 755 (8th Cir. 2013) (quoting Firemen's Fund Ins. Co. v. Thien, 63 F.3d 754, 758 (8th Cir. 1995)). "In determining whether proffered evidence is misleading or confusing, the trial court is given a great deal of discretion." Id. (quoting United States v. Witschner, 624 F.2d 840, 846 (8th Cir. 1980)).

At trial and in the district court's post-trial order, filed on May 23, 2014, the district court expressed its reservations regarding Boman's proffered defense evidence. In its post-trial order, the district court explained that, although it permitted Boman "to cross-examine witnesses about the fact that Cheyenne Cinkan had a black eye on the day of the incident," the court "did not permit [Boman] to delve into alleged prior abuse of Cheyenne Cinkan." Citing Rule 403, the district court reasoned that "[w]hat limited probative value this line of questioning might have had was 'substantially outweighed by a danger of . . . confusing the issues, misleading the jury [and causing] undue delay.'" Similarly, the district court concluded the subject matter of the argument between Brown and Cinkan was inadmissible for the same reasons under Rule 403. We conclude the district court did not abuse its considerable discretion in deciding that Boman's proffered evidence was inadmissible under Rule 403 for the reasons provided at trial and in its post-trial order. See Clark v. Martinez, 295 F.3d 809, 813 (8th Cir. 2002) (reviewing a district court's ruling excluding evidence for an abuse of discretion and finding the district court did not abuse its "broad discretion" by excluding certain testimony).

## C. Admissible 911 Recording

At trial, the district court permitted the admission of a recording of Cinkan's and Brown's 911 call, finding the recording qualified as an excited utterance under Rule 803(2). On appeal, Boman argues the district court erred because the government did not prove the startling event took place; "Brown only acknowledged that he heard a gunshot, nothing more." Put differently, Boman contends the government failed to provide an adequate foundation to prove the startling event occurred. Boman also argues the government failed to prove the statements on Brown's 911 call related to the startling event. For these reasons, Boman argues the recording "lacked sufficient indicia of truthfulness to qualify as a hearsay exception."

Pursuant to Rule 803(2), "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded by the rule against hearsay. Fed. R. Evid. 803(2). "The rationale behind this particular exception 'derives from the teaching of experience that the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness.'" United States v. Graves, 756 F.3d 602, 604 (8th Cir. 2014) (quoting Brunsting v. Lutsen Mtns. Corp., 601 F.3d 813, 817 (8th Cir. 2010)).

The record supports the trial court's holding that Brown experienced a startling event and that Brown's and Cinkan's statements related to the incident. As the district court aptly explained in its post-trial order, the government properly laid the foundation for the underlying startling event by having Brown testify: "[Brown] testified that the 911 call was placed immediately after he heard a gunshot and checked himself for bullet wounds." The characteristics of that incident would likely cause a reasonable person to become stressed or excited. We do not disagree with the district court's conclusion that "Brown's statements were made while under the stress caused by the gunshot." Brown also clearly described on the recording the event that startled him—that is, "Donnie" had just shot at him. For the above reasons, we find the district court did not abuse its discretion in admitting the 911 call under the excited utterance exception of Rule 803(2). See United States v. Brun, 416 F.3d 703, 707 (8th Cir. 2005); United States v. Phelps, 168 F.3d 1048, 1055 (8th Cir. 1999) (both affirming district courts' admissions of statements made during 911 calls, following gunshots being fired, as excited utterances).

## D. Armed Career Criminal

At sentencing, the district court found Boman was an Armed Career Criminal because he had three prior convictions for violent felonies. See 18 U.S.C. § 924(e). On appeal, Boman concedes his 1995 conviction for Assault within Maritime and Territorial Jurisdiction constitutes a predicate offense under the ACCA. However, in

his opening brief, Boman argues the district court erred in classifying his two 1992 felony convictions for Use of a Firearm During the Commission of a Violent Crime as predicate offenses under the ACCA. According to Boman, his 1992 convictions in violation of 18 U.S.C. § 924(c)(1) "were not meaningfully separated by time, the government failed to meet its burden with respect to the distance between offenses, and the offenses were similar in execution and motivation." Thus, Boman argues his two convictions in 1992 were, at most, one rather than two predicate offenses under the ACCA. In his opening brief, Boman does not contest whether his 1992 convictions constituted violent felonies under the ACCA. However, in his supplemental brief, Boman contends that his convictions in 1992 did not even qualify as ACCA predicate offenses because they were not "violent felonies" under 18 U.S.C. § 924(e)(2)(B)(i).[6]

Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g), who has "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to a 15-year minimum sentence of imprisonment. 18 U.S.C. § 924(e)(1). A "[v]iolent felony" is defined as "any crime punishable by imprisonment for a term exceeding one

_____

[6] Earlier, in a Rule 28(j) letter sent to this Court, dated July 6, 2015, Boman presented a different argument. In his Rule 28(j) letter, Boman argued the United States Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551 (2015), was relevant to whether his 1992 convictions for violations of § 924(c)(1) qualified as violent felonies under § 924(e)(2)(B). In Johnson, the Supreme Court held that imposing an increased sentence pursuant to the residual clause of the ACCA, § 924(e)(2)(B)(ii), violates due process under the Fifth Amendment. Johnson, 135 S. Ct. at 2563. However, as we have held elsewhere, Johnson is not implicated if a defendant's prior conviction comes from the first definition of a "violent felony" in the ACCA, or 18 U.S.C. § 924(e)(2)(B)(i). See Ortiz v. Lynch, 796 F.3d 932, 935 n.2 (8th Cir. 2015); see also United States v. Harris, 794 F.3d 885, 887 n.1 (8th Cir. 2015). Thus, because Boman concedes his two convictions pursuant to § 924(c)(1) in 1992 "may only qualify as ACCA predicates under § 924(e)(2)(B)(i)," not § 924(e)(2)(B)(ii), Johnson's invalidation of the residual clause does not change the outcome here.

year . . . that . . . has an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In deciding whether a past conviction is a "violent felony" for ACCA purposes, we apply the "categorical approach" or the "modified categorical approach." See United States v. Mathis, 786 F.3d 1068, 1071–72 (8th Cir. 2015).

"In the typical case, we use the 'categorical approach' to determine whether prior convictions amount to violent felonies." Id. at 1071. "This approach requires courts to 'look only to the fact of conviction and the statutory definition of the prior offense.'" Id. at 1071–72 (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)). On the other hand, this Court may apply the "modified categorical approach" where a statute is divisible, which "allows courts to examine certain documents (such as charging papers and jury instructions) to determine under which set of alternative elements the defendant was convicted." Id. at 1072. As this Court recently explained in United States v. Tucker, a statute of conviction is considered "divisible" for ACCA purposes where the statute "sets out one or more elements of the offense in the alternative." 740 F.3d 1177, 1179 (8th Cir. 2014) (en banc); see also Descamps v. United States, 133 S. Ct. 2276, 2282 (2013) ("[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.").

In this case, Boman's statute of conviction, 18 U.S.C. § 924(c) (1992), was divisible because it criminalized the use or carrying of a firearm during and in relation to "any crime of violence *or* drug trafficking crime."[7] 18 U.S.C. § 924(c)(1)(A) (1992) (emphasis added); United States v. Rodriguez-Moreno, 526 U.S. 275, 280

---

[7] At the time Boman committed the offense and pleaded guilty, 18 U.S.C. § 924(c)(1) provided: "Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to imprisonment for five years . . ." 18 U.S.C. § 924(c)(1) (1992).

(1999) ("In sum, we interpret § 924(c)(1) to contain two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a gun and the commission of a kidnapping."). Our conclusion that Boman's statute of conviction was divisible is bolstered because the bases for his conviction were separated by the disjunctive "or." United States v. Bankhead, 746 F.3d 323, 326 (8th Cir. 2014) ("The hallmark of divisibility is the enumeration of alternative bases for conviction separated by the disjunctive 'or.'"). The statutory scheme was also further divisible because "crime of violence" under § 924(c)(3) included two definitions and § 924(c)(3) proscribed conduct occurring "against the person *or* property of another." See 18 U.S.C. § 924(c)(3) (emphasis added). Thus, we apply the "modified categorical approach" to determine the crime for which Boman was convicted and whether it was a "violent felony."

The modified categorical approach enables a court to "examine the trial record, including charging documents, jury instructions, written plea agreements, transcripts of plea colloquies, and findings of fact and conclusions of law from a bench trial." United States v. Vinton, 631 F.3d 476, 484 (8th Cir. 2011) (quoting Shepard v. United States, 544 U.S. 13, 20 (2005)). Having reviewed the indictment and 1992 judgment, it is clear Boman was charged and convicted in Counts 3 and 6 for using a firearm during the commission of "a violent crime," namely, the federal crimes of robbery, 18 U.S.C. § 2111, and assault with intent to commit robbery, 18 U.S.C. § 113(b). To commit a robbery under § 2111 in 1992, a defendant had to, "within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, take from the person or presence of another anything of value[.]" 18 U.S.C. § 2111 (1992). To commit an assault under § 113(b) in 1992, a defendant, "within the special maritime and territorial jurisdiction of the United States," had to have committed "[a]ssault with intent to commit any felony." 18 U.S.C. § 113(b) (1992). Therefore, each of Boman's convictions in violation of § 924(c)(1) had as an element the "attempted use, or threatened use of physical force against the person of another." See 18 U.S.C. § 924(e)(2)(B)(i). Also, Boman's convictions under §

924(c)(1) each carried a consecutive sixty-month prison sentence. See id. Thus, the district court did not commit plain error in holding Boman's violations of § 924(c) qualified as violent felonies under § 924(e)(2)(B)(i).[8]

For purposes of analyzing whether the district court erred in deciding Boman's 1992 convictions were "sufficiently separate and distinct criminal episodes" to be two, rather than merely one, predicate offenses under the ACCA, we must consider the facts surrounding those episodes.[9] On May 3, 1992, at 3:00 a.m., Boman pulled a handgun, pointed it at a victim, and demanded money. Boman took $220.00 from the victim and told the victim to run. As the victim ran away, he heard a gunshot and fell and heard two more gunshots. Later that same morning, at 4:30 a.m., Boman pointed a handgun at a different victim and demanded money. The victim gave Boman $20.00. Boman placed the barrel of his gun to his victim's temple, demanded more money, and threatened the victim. As Boman walked away, he turned and shot four times at the victim who ducked inside a truck. Boman shot the front windshield on the driver's side of the truck. With these facts in mind, we analyze three important factors to decide if the criminal episodes were discrete: "(1) the time lapse between offenses, (2) the physical distance between their occurrence, and (3) their lack of overall substantive continuity, a factor that is often demonstrated in the violent-felony context by different victims or different aggressions." United States v. Willoughby, 653 F.3d 738, 742–43 (8th Cir. 2011).

---

[8] Although we conclude a violation of 18 U.S.C. § 924(c) constitutes a "violent felony" under the ACCA, the parties do not cite case law directly supporting that finding. Our research has revealed, however, that we are not the first federal circuit court to make such a finding. See, e.g., United States v. Stephens, 237 F.3d 1031, 1033 (9th Cir. 2001) (finding defendant's conviction for carrying a gun in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c) constituted a "violent felony" under the ACCA); but see id. at 1034–35 (Reinhardt, J., dissenting).

[9] No party suggests that we are prohibited from examining the facts involved in the prior offenses to assess the issue of separateness. The facts we consider are from Boman's plea agreement in 1992.

First, ninety minutes separated Boman's two criminal episodes, which weighs heavily in favor of finding the crimes were separate and distinct offenses under the ACCA. See United States v. Gray, 85 F.3d 380, 381 (8th Cir. 1996); see also United States v. Hamell, 3 F.3d 1187, 1191 (8th Cir. 1993) (both cases involved offenses separated by only twenty-five minutes but the offenses were still found separate and distinct offenses under the ACCA). Even Boman admits the first factor, which we have found is the "most important consideration," favors the government. See Abbott, 794 F.3d at 898 ("[T]he first factor is the most important consideration because 'the ACCA seems to prioritize time lapse given that its plain language stipulates that the predicate offenses be committed on *occasions different from one another*.'") (alteration in original) (internal quotation marks and citations omitted).

Second, the two criminal episodes occurred in two different places within Fort Carson, Colorado: one crime occurred at the base's general commissary and another took place at the base's separate store for non-commissioned officers. The distance between these locations is unclear from the record. However, Hamell suggests two convictions can occur in close physical proximity—there, the defendant stabbed a victim in a tavern and then shot another victim outside the tavern—and still be deemed separate offenses under the ACCA. See Hamell, 3 F.3d at 1191. Thus, even if Boman's crimes occurred within a close distance of each other, they would likely still be separate offenses under the ACCA.

Third, based upon the narrative above, the two criminal episodes committed by Boman in 1992 involved different victims and criminal aggressions. Thus, Boman's 1992 convictions for Counts 3 and 6 involved different victims, times, acts, and locations. For the above reasons, the district court did not err in finding the offenses were, in the district court's words, "discrete criminal episodes." Accordingly, the district court did not plainly err in deciding Boman had three previous convictions and qualified as an Armed Career Criminal under the ACCA.

-14-

E. Possession of Firearm in Connection with Iowa Offense of Intimidation

At sentencing, the district court applied a four-level enhancement under USSG § 2K2.1(b)(6)(B). On appeal, Boman argues the district court clearly erred for two reasons. First, the government failed to prove by a preponderance of the evidence that Boman discharged a firearm in Brown's direction. As Boman put it, "[I]t is at least as likely that the 'gunshot' came from Brown's discharge of a firearm, not Mr. Boman's." Nor did the government disprove Boman's justification for firing a shot in the direction of Brown by a preponderance of the evidence. Because Boman was sentenced as an Armed Career Criminal, we need not address his challenge to the district court's assessment of a four-level enhancement under § 2K2.1(b)(6)(B). Boman's base offense level without the enhancement was 24, but his base offense level with the enhancement was 28. The ACCA, however, resulted in an even higher base offense level and drove Boman's sentence. See USSG § 4B1.4. Therefore, even if we agreed with Boman on this issue, his base offense level would remain the same.

III. Conclusion

Based on the foregoing reasons, we find the district court did not commit reversible error by its evidentiary rulings or sentencing decisions pursuant to the ACCA. Therefore, we affirm Boman's conviction and sentence.

_____