# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1228
_____

United States of America

*Plaintiff - Appellee*

v.

Tyreese Thompson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 12, 2021
Filed: July 26, 2021
_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Tyreese Thompson was convicted of two counts of being a felon in possession of a firearm and received an Armed Career Criminal Act sentencing enhancement.

The district court[1] denied his motion to suppress evidence and his motions for acquittal. We affirm his conviction and his sentence.

## I.

Tyreese Thompson, a convicted felon, was suspected of being involved in a gunfight in 2014 and stealing guns from a pawn shop in 2016. At the time of the 2016 burglary, Thompson was also the subject of a felony arrest warrant for a separate robbery. A confidential informant told the ATF that Thompson was at a house in Kansas City, Missouri that police thought belonged to his girlfriend. Police went there to arrest him.

Officers knocked on the door, announced themselves, and called Thompson's name. They saw window blinds move and heard sounds of people walking and moving things inside the house. Officers continued to knock and call for six to eight minutes. George Richards finally answered the door with an aggressive dog. Officers asked Richards to restrain the dog, and he dragged it away, leaving the door open. An officer then saw Thompson peek out from inside the house, so he ordered him to show his hands. Thompson instead retreated around a corner, but eventually he came out and surrendered. When he was arrested and put in a police car, officers saw dirt and spider webs on his arms, shirt, and the back of his head.

Richards then emerged. Police asked him twice whether anyone else was inside, but he did not answer right away. Then he said, "Nobody else that I know of."

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri. Before trial, Thompson's case was reassigned to the Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

D. Ct. Dkt. 49 at 4. Officers were not sure of this because of his reluctance to answer, his odd response, the information suggesting Thompson's girlfriend lived there, the sounds from inside, and the long delay in answering the door. Concerned about "some sort of an ambush," D. Ct. Dkt. 48 at 30, they told Richards that they would do a protective sweep of the home. He did not object.

During the ten-minute sweep, police looked into a back bedroom closet and noticed an attic access panel in the ceiling and a scuff mark on the wall. Worried that someone went into the attic, an officer guarded the closet until the house was cleared. Then they opened the attic access panel and saw disturbed cobwebs—and guns.

Richards claimed that he either owned or rented the house, but denied knowing about the guns. He agreed to a search of his house. Richards said that Thompson was dropped off at the house the day before and did not live there. Richards also said that Thompson spent the night and slept in the room with the attic access. When officers went into the attic again, they recovered four guns.

A grand jury indicted Thompson on two counts of possessing a gun as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1): Count One was for possessing a handgun during the 2014 gunfight and Count Two was for the guns found in the attic. Thompson moved to suppress the attic guns. The district court adopted the magistrate judge's findings that Thompson had no standing to object to the search or, in the alternative, that Richards consented to the search. Thompson was convicted of both counts at trial.

Thompson made four motions for judgment of acquittal. He first argued that the evidence of his guilt for Count One (the 2014 gun possession) was insufficient and the evidence of his guilt for Count Two (the attic guns) was gathered in violation of the Fourth Amendment. He also asserted that the Supreme Court's holding in

-3-

*Rehaif v. United States*, 139 S. Ct. 2191 (2019) requires a new trial on each count. These were all denied.

At sentencing, Thompson objected to the four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense based on marijuana found in his girlfriend's car at the time of the 2014 gunfight. Thompson said that there was no evidence presented at trial to establish he possessed marijuana—but the Government presented three witnesses at sentencing and the district court applied the enhancement. The district court sentenced Thompson to concurrent 293-month sentences on each count.

Thompson appeals, arguing: (1) the district court improperly denied his motion to suppress the guns found in the attic; (2) his motions for judgments of acquittal were wrongly denied; and (3) the four-level sentencing enhancement for possessing a firearm in connection with felony drug possession was inappropriate.

II.

A.

We first address Thompson's argument that the district court improperly denied his motion to suppress evidence of the attic guns. He says the officers had no authority to do the protective sweep or search the home after he voluntarily came out of the house and was in the police car.

"When considering a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017) (citation omitted). We review whether the protective sweep was justified *de novo*. *Id.*

Thompson says that he had a legitimate and reasonable expectation of privacy in the bedroom with the closet attic access because he was an overnight guest. He argues that the sweep was illegal after the officers arrested him because the record shows nothing about "any additional individuals present[ing] a danger to the officers who were done with their task" and that no officer could "point to any threat to his safety." Thompson Br. 19.

Assuming without deciding that Thompson has "standing" to challenge the search, the protective sweep was justified. Officers doing a protective sweep must "possess[] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing . . . that the area swept harbored an individual posing a danger to the officer or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990) (citation omitted) (cleaned up). "*Buie* authorizes protective sweeps for unknown individuals in a house who may pose a threat to officers as they effectuate an arrest[,]" but "*Buie* does not allow a protective sweep for weapons or contraband." *United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005). Even so, officers may seize any "immediately apparent" contraband that is "in plain view" while performing the sweep. *Alatorre*, 863 F.3d at 815–16 (citation omitted).

There was good reason here for a sweep. First, Thompson was suspected of stealing several guns from a pawn shop in a burglary, committing a robbery, and possessing a handgun during a gunfight. That meant Thompson could have left guns behind in the house for another person to use against officers. Second, after announcing their presence, officers were forced to wait for minutes while the blinds on either side of the door moved and they heard movement (and possible preparation for an attack) inside. Third, officers thought the house belonged to Thompson's girlfriend, who was not located. And after Richards was asked whether anyone else was still in the house, he was silent at first and then gave the odd, ambiguous answer that there was "[n]obody else" in the home "that [he] kn[e]w of." D. Ct. Dkt. 49 at

4. Richards's initial reluctance and his unusual response strengthened suspicion that potentially dangerous people remained in the house. *See United States v. Crisolis-Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014) (explaining that an occupant's hesitation after being asked if there are others in the home supports an officer's suspicion about potential danger). Finally, Thompson was covered in dust and cobwebs, suggesting that he had just been in a dusty place like an attic or basement. These facts support the reasonable belief that "someone else could be inside posing a danger to [officers] during or following the arrest." *Alatorre*, 863 F.3d at 814.

This case is like *Alatorre*. We said in that case that because of the defendant's "criminal history" involving concealed firearms, guns "were conceivably present in the residence." *Alatorre*, 863 F.3d at 815. We recognized how that could give "anyone remaining inside the residence access to weapons to use in an ambush of the officers." *Id.* We also said that "audible movements and behaviors . . . of people behind the door and blinds after the officers knocked, along with the delays in answering the door, created a reasonable uncertainty as to how many people were inside the residence and their intentions toward the officers." *Id.* Those facts are all present here. Finally, before Thompson came out of the house, he ducked behind a wall inside the home, indicating that "it was easy for someone to hide just out of view of the officers inside the residence in a position from which an attack could be launched." *Id.* at 814–15. The officers here faced a similar "vulnerab[ility] to attack from someone inside the residence." *Id.* at 815.

Officers reasonably believed that the home "harbored an individual" hiding in a place containing dust and cobwebs like an attic, basement, or closet who could "pos[e] a danger to the officer or others" during and after the arrest. *Buie*, 494 U.S. at 327. Extending the sweep to the closet and then to the attic after seeing the scuff mark was reasonable. Sweeping a space that requires a boost or ladder to access, like an attic, is at the outer boundary of the protective sweep doctrine; but we think the officers' conduct here was within *Alatorre*'s scope.

Even if the protective sweep could not cover the attic, Thompson does not show that Richards's later consent to search the home was insufficient. Thompson says that Richards's consent did not "extend to the area of [Thompson]'s privacy which included the back bedroom, the closet[,] and attic access." Thompson Br. 24. But our caselaw contradicts that. *See United States v. Wright*, 971 F.2d 176, 180 (8th Cir. 1992) (A host possesses "authority to consent to a search of his own home, including the guest bedroom where [the houseguest] spent the evening."). Richards had actual authority to give officers permission to search the bedroom, closet, and attic.

Thompson's other argument is that Richards's consent "cannot absolve the officer's illegal entry." Thompson Br. 23. But he fails to cite any supporting authority. To the contrary, freely-given post-search consent can purge the taint of a constitutional violation in specific circumstances. *United States v. Yousif*, 308 F.3d 820, 830–31 (8th Cir. 2002). Thompson does not argue that Richards's consent was involuntary, so we need not analyze whether it was "truly an act of free will" that sufficed "to purge the primary taint" of any illegal search and seizure. *See id.* at 830.

## B.

Next, we consider whether the Government failed to comply with *Rehaif*. Thompson says the Government did not prove all elements of the offense beyond a reasonable doubt, and so his motions for acquittal should have been granted.[2]

---

[2]Thompson also argues that the indictment was insufficient. Thompson Br. 8–10. But he does not show good cause for failing to raise this issue before trial, *see* Fed. R. Crim. P. 12(b)(3); *see also* Fed. R. Crim. P. 12(c)(3), and so we will not address this argument. *See United States v. Anderson*, 783 F.3d 727, 741 (8th Cir. 2015).

We review this issue for plain error because Thompson submitted his renewed motions for acquittal raising the *Rehaif* issue after the deadline for post-verdict motions. *See United States v. Gilmore*, 968 F.3d 883, 887 (8th Cir. 2020). Under plain error review, Thompson must show that "there was an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* "We view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Ferguson*, 970 F.3d 895, 902 (8th Cir. 2020) (citation omitted).

Thompson was indicted for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The Supreme Court clarified in *Rehaif* that an element of an offense under § 922(g) is the defendant's knowledge that they belong to a class of people "barred from possessing a firearm." 139 S. Ct. at 2200. Thompson stipulated at trial that he had been convicted of a crime punishable by imprisonment for more than one year. A stipulation like this is "legally sufficient to establish [the defendant's] knowledge" of his status as a felon and so is enough to "sustain the conviction," even under the standard announced in *Rehaif. United States v. Owens*, 966 F.3d 700, 709 (8th Cir. 2020).

Thompson also implies that the lack of a jury instruction about his knowledge of his felon status is clear error in light of *Rehaif.* While the absence of that instruction was erroneous, Thompson is not entitled to relief because he cannot show a reasonable probability that, but for the error, the outcome of his trial would have been different in light of his stipulation. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (To have "affected the defendant's substantial rights," the defendant must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.") (citation omitted).

Thompson also received a sentence enhancement under the Armed Career Criminal Act. Section 924(e)(1) of the ACCA provides that anyone who has three prior convictions for a violent felony, serious drug offense, or both shall be imprisoned for at least fifteen years. 18 U.S.C. § 924(e)(1). Thompson argues that *Rehaif* requires the Government to prove each of the three prior convictions to a jury beyond a reasonable doubt before the enhancement can take effect. But the Supreme Court rejected that argument in *United States v. Haymond*. 139 S. Ct. 2369, 2377 n.3 (2019) ("Prosecutors need not prove to a jury the fact of a defendant's prior conviction.").

Although Thompson makes much of the fact that § 924(e) was mentioned in his indictment, that does not matter because, as we have said before, "[r]eferences in the indictment to sentence enhancements such as section 924(e) are mere surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *United States v. Bates*, 77 F.3d 1101, 1105 (8th Cir. 1996) (citation omitted). Thompson had three qualifying prior convictions and the indictment was sufficient to charge him under § 922(g)(1) even without the reference to § 924(e). *See United States v. Jawher*, 950 F.3d 576, 579 n.2 (8th Cir. 2020) ("The language of the indictment against Jawher closely tracked the language of § 922(g)(5)(A) and sufficiently charged Jawher with being a prohibited person in possession of a firearm.").

C.

Thompson finally argues that the district court should not have applied a four-level sentencing enhancement for his possession of a firearm in connection with another felony offense. Thompson says that the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was wrong because the marijuana found in his girlfriend's car in the aftermath of the 2014 gunfight was not his and because his gun could not be connected to the drugs.

We need not address this argument because even if we agreed with Thompson, his total offense level would not decrease. *See United States v. Boman*, 810 F.3d 534, 544 (8th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 87 (2016). Thompson's adjusted offense level, taking the enhancement into account, was 32. But because Thompson is an armed career criminal, his offense level was set at 33. *See* U.S.S.G. § 4B1.4. We declined to consider a similar challenge in *Boman* because the ACCA "resulted in an even higher base offense level and drove [the defendant's] sentence," so there would be no change in the offense level even if we agreed with the defendant's argument. 810 F.3d at 544. The reasoning from *Boman* is on all fours with this case.

### III.

The judgment of the district court is affirmed.

_____