United States Court of Appeals

For the Eighth Circuit

_____

No. 13-3134

_____

United States of America

*Plaintiff - Appellee*

v.

Delvonn Battle

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: September 11, 2014
Filed: December 22, 2014

_____

Before BENTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Delvonn Battle was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to 120 months

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

imprisonment. Battle challenges his conviction and sentence. For the reasons set forth below, we affirm.

## I. Background

We recount the evidence in the light most favorable to the jury's verdict. United States v. Stevens, 439 F.3d 983, 986 (8th Cir. 2006). On January 13, 2012, two Waterloo, Iowa police officers, Michael Girsch and Spencer Gann, were conducting surveillance on an apartment complex where they suspected a subject with an outstanding warrant was hiding. The officers saw several individuals getting into a parked vehicle behind the complex. As the vehicle exited the complex, the officers noticed its rear license plate was not properly lit and initiated a traffic stop. The officers observed that the vehicle, which was moving 10 to 15 miles per hour, stopped slowly, taking approximately 20 seconds to come to a complete stop.

There were three individuals in the vehicle: the driver, Ryan Marshall; the front seat passenger, Battle; and a back right passenger, Darrel Hardy. Their identification cards showed that all three men were from Des Moines, Iowa. Officer Girsch asked Marshall to exit the vehicle so he could show him the lighting problem. Officer Gann talked to Battle and Hardy, who both remained in the car. The officers noticed inconsistencies among the three mens' accounts as to why they were in Waterloo and what stops they had made during their trip.

A third officer, Officer Bose, arrived on the scene with a drug detection dog. Based on the vehicle's slow stop and the occupants' inconsistent accounts, the officers became suspicious and asked Battle and Hardy to exit the vehicle so they could conduct a dog sniff. When Hardy exited the vehicle, he fled from the scene. Officer Gann immediately pursued on foot and Officer Girsch followed shortly after, leaving Officer Bose at the vehicle with Marshall and Battle. Hardy ran about 35 yards before being apprehended. The pursuing officers did not observe him

discarding anything while he was running and did not find any contraband when they retraced his steps in the snow. The officers arrested Hardy and searched the vehicle, where they found a Ruger 9-millimeter handgun that contained a loaded magazine under the front passenger seat. The gun's barrel was pointed toward the back seat. Debris and tubing connected to the seat's electric controls blocked access to the gun from the back seat. The officers photographed the gun's position before removing it. They arrested Marshall and Battle and transported all three men to the police station.

Officer Gann interviewed Battle at the police station. During that interview, Battle stated he did not have family in Waterloo, though he had said at the scene that he did. Battle also told Officer Gann the trio had just arrived in Des Moines when they were pulled over and had only made one stop, in Dike, Iowa. He did not admit they had stopped at the apartment complex where officers first observed their vehicle. Battle denied possessing the firearm or knowing it was in the vehicle. Police initially suspected the gun had been placed by the back seat passenger and charged only Marshall and Hardy with possession.

Further investigation implicated Battle's possession of the gun. The photographs from the scene showing the gun's position under the seat indicated it had been placed there from the front. The photographs also led officers to believe the gun could not have been pushed under the front seat from the rear seat area because of how the debris was positioned and because the tubing under the front seat blocked access to the handgun from the rear. Recordings of Hardy's prison phone conversations included discussions with Marshall about the firearm and "DV," a nickname Battle uses, and with both Marshall and Battle about how Hardy would handle his charges. When an investigator interviewed Battle on January 21, 2012, he denied talking to Hardy on the phone while he was in prison and denied using the nickname "DV." Shortly after the Waterloo incident, Hardy agreed to testify against Marshall and Battle in exchange for his charges being dropped. The state filed

charges against Marshall and Battle for being felons in possession of a firearm. Marshall was convicted in state court, but the state charges against Battle were dropped in favor of federal charges. In December 2012, investigators interviewed another man, Lonnie Williams, who told them that Battle, who he knew only as "DV," was the shooter in a December 4, 2011 shooting Williams witnessed in a Des Moines gas station parking lot. In January 2013, Waterloo police received a lab report matching the Waterloo firearm to casings from the 2011 Des Moines shooting. Battle was federally charged with being a felon in possession of a firearm.

The district court granted the government's pre-trial motion to admit evidence concerning the Des Moines shooting at Battle's trial, holding it was admissible as direct evidence probative of the crime charged and thus not subject to the analysis for admissibility of character evidence under Federal Rule of Evidence 404(b). The government presented ballistics evidence matching the casings from the shooting to the gun found in the vehicle in Waterloo. Both parties presented eyewitness testimony from the shooting. Witnesses testified that the gas station parking lot was very crowded when the shooting occurred. Lonnie Williams, a long-time acquaintance of Battle's who first identified him as the shooter, was driving the car in which the victim was riding. He observed the shooting from 8 to 10 feet away and testified he was 100 percent sure that Battle, or "DV," was the shooter. An off-duty police officer, Roger Stiles, was working security at the gas station on the night of the shooting and observed the shooter from 20 to 25 feet away. He could not identify him but described him as 5'10" to 6 feet tall with a slender build. Several witnesses testified that Hardy, who is 5'10" and weighed at least 230 pounds, has a considerably heavier build than Battle, who is 5'10" and weighed approximately 165 pounds. Officer Stiles testified that he would not consider someone who is 5'10" and 230-plus pounds to be "slender." A third eyewitness, Calvin Briggs, a friend of Battle's, testified he did not actually see the shooter but also did not see Battle at the gas station that night. A fourth eyewitness, Anthony Blissett, a relative of both Battle and Hardy, testified he pulled into the gas station, saw the shooting from three to four

yards away, and immediately left the station. He identified Hardy as the shooter. Blissett testified that the first time he identified Hardy as the shooter was when an investigator contacted him a day or two before Battle's trial started.

The court also considered and denied several motions Battle made during trial. On the first day of trial, Battle made an oral motion to admit evidence of Hardy's prior convictions and other criminal acts. The government listed Hardy as a potential witness, so both parties presented arguments about admission of the convictions as impeachment evidence under Federal Rule of Evidence 609. Battle also argued the evidence was admissible as "reverse 404(b)" evidence. See Fed. R. Evid. 404(b). He argued the evidence tended to establish that Hardy habitually carries guns and runs from police when confronted, which, Battle argued, could have led the jury to find Hardy was in sole possession of the firearm. Battle submitted a brief detailing the evidence on the second morning of trial, which the court entered into the record but did not consider because of its late submission. The court heard arguments from both sides and ruled that the bulk of the evidence was inadmissible under Rule 404(b). In addition, the court refused Battle's request to grant judicial immunity to Marshall to testify about contraband he claimed he found when retracing Hardy's footsteps the day after the arrest. Finally, the court denied Battle's motion for acquittal.

After a two-day trial, the jury convicted Battle of being a felon in possession of a firearm. The Presentence Report (PSR) placed Battle in criminal history category VI based on his criminal history score of 17. The PSR recommended a total offense level of 29 based on the charged offense and a finding that Battle committed the Des Moines shooting and caused serious bodily injury to that victim. The Guidelines established an imprisonment range of 151 to 188 months, and the PSR recommended the 120-month statutory maximum sentence, pursuant to section 5G1.1(a) of the United States Sentencing Guidelines (USSG). The court found that Battle's base offense level was 20 and applied a four-level enhancement for use of a firearm in connection with the Des Moines shooting, for a total base offense level of 24. See

-5-

United States Sentencing Commission, Guidelines Manual, § 2K2.1(b)(6)(B). The Guidelines imprisonment range for offense level 24 with criminal history category VI is 100 to 125 months. After considering relevant sentencing factors pursuant to 18 U.S.C. § 3553(a), the district court sentenced Battle to the statutory maximum of 120 months imprisonment and 3 years supervised release.

Battle now appeals the admission of the Des Moines shooting evidence, exclusion of Hardy's prior bad acts evidence, denial of judicial immunity for Marshall, denial of his motion for acquittal, application of the sentencing enhancement, and the reasonableness of his sentence.

## II. Admission of Des Moines Shooting Evidence

Battle argues the district court erred in admitting evidence of the Des Moines shooting because it was too remote to be considered direct evidence and thus was evidence of crimes, wrongs, or other acts, improperly offered to suggest his propensity to commit the charged crime. See Fed. R. Evid. 404(b). He also argues the probative value of the evidence was substantially outweighed by the danger of unfair prejudice to his defense. See Fed. R. Evid. 403. We review a district court's evidentiary rulings for an abuse of discretion. United States v. Brandon, 521 F.3d 1019, 1025-26 (8th Cir. 2008).

When "evidence of other crimes . . . tends logically to prove any element of the crime charged . . . it is admissible as an integral part of the immediate context of the crime charged . . . [and] is not extrinsic and therefore is not governed by Rule 404(b)." United States v. Bass, 794 F.2d 1305, 1312 (8th Cir. 1986) (internal quotation marks and citations omitted). To convict Battle under 18 U.S.C. § 922(g)(1), the government had to prove beyond a reasonable doubt that: (1) Battle had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) Battle knowingly possessed a firearm; and (3) the firearm had

been in or affected interstate commerce. United States v. Walker, 393 F.3d 842, 846 (8th Cir. 2005). The parties stipulated to the first and third elements, so the government only had to prove that Battle knowingly possessed the firearm.

The government can prove knowing possession by showing actual or constructive possession, and possession can be sole or joint. Id. at 846-47. Constructive possession "'is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.'" Id. at 847 (quoting United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993)). "Mere physical proximity to a firearm is not enough to show constructive possession, but knowledge of [a firearm's] presence, combined with control is constructive possession." United States v. Mann, 701 F.3d 274, 304-05 (8th Cir. 2012) (internal quotation marks omitted), cert. denied, 134 S. Ct. 470 (2013). As "a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence . . . knowledge is generally established through circumstantial evidence." Id. at 305 (internal quotation marks omitted). Prior possession of a firearm is directly relevant to proving later possession of that same weapon because it helps establish ownership or control of the weapon. United States v. Adams, 604 F.3d 596, 599 (8th Cir. 2010); United States v. Rock, 282 F.3d 548, 551 (8th Cir. 2002). Limited evidence of a prior crime committed by the defendant with the same firearm may be admitted in a felon-in-possession case because it is highly probative of the defendant's possession of that weapon. United States v. Flenoid, 415 F.3d 974, 976-77 (8th Cir. 2005).

The firearm police found in the vehicle in Waterloo was the same handgun used in the prior Des Moines shooting. As there were three individuals in the vehicle in which the handgun was found and no one was in actual possession of the firearm, the government had to prove constructive possession. Evidence that Battle used the firearm previously is highly probative of his ownership or subsequent control over it, which supports a finding of constructive possession. See Adams, 604 F.3d at 599; Flenoid, 415 F.3d at 977. Since this evidence "'tend[ed] logically to prove [an]

element of the crime charged,'" it was direct evidence and was not subject to Rule 404(b). Adams, 604 F.3d at 599 (quoting Moore v. United States, 178 F.3d 994, 1000 (8th Cir. 1999)).

Battle also argues the evidence was unduly prejudicial because it created a "trial within a trial," diverting significant time and attention to proving he committed an uncharged crime. See Fed. R. Evid. 403. We disagree. Evidence demonstrating Battle previously possessed the firearm was directly relevant to the crime charged. The government told the jury that Battle was not being prosecuted for the shooting and that the Des Moines evidence was to be used only in determining whether he knowingly possessed the firearm in Waterloo. The testimony elicited focused on the identity of the shooter and the handgun, not on the injury to the victim or other facts surrounding that crime. The court also issued a limiting instruction to the jury on use of the evidence, which "'diminishes the danger of any unfair prejudice.'" Rock, 282 F.3d at 551 (quoting United States v. Franklin, 250 F.3d 653, 659 (8th Cir. 2001)). The court did not abuse its discretion in admitting this evidence.

### III.  Exclusion of "Reverse 404(b)" Evidence

Battle claims the district court erred in excluding evidence of Hardy's prior convictions and other bad acts, which he sought to introduce to suggest Hardy was in sole possession of the firearm. "We review a district court's ruling excluding evidence for an abuse of discretion." Clark v. Martinez, 295 F.3d 809, 812 (8th Cir. 2002). "Absent an abuse of discretion, this Court will not substitute its judgment for the judgment of the district court." Id. Battle challenges the exclusion of this evidence as "reverse 404(b)" evidence. Federal Rule of Evidence 404(b) governs admission of evidence of previous crimes, wrongs, or other acts. Evidence of prior bad acts may not be introduced to prove a person's character or propensity to commit a crime but may be admissible for another purpose, such as proving knowledge or intent. Fed. R. Evid. 404(b)(2). Rule 404(b) evidence is typically introduced by the

prosecution to help prove the defendant guilty of the charged crime. "Reverse 404(b)" is a term some courts have used to refer to evidence of prior bad acts by a third party, introduced by the defendant and offered to implicate the third party in the charged crime.[2]

Battle sought to introduce evidence of a number of prior convictions, dismissed charges, and facts and circumstances underlying these prior bad acts, extending back more than 15 years to include incidents that occurred when Hardy was a juvenile. The table of evidence Battle proffered included more than 20 charges between 1996 and 2012. The convictions included assault with a weapon, multiple counts of possession of controlled substances, burglary, theft, and a 2000 conviction for being a felon in possession of a firearm. The dismissed charges and underlying facts included instances where Hardy ran from police or had a firearm when he was apprehended. While Battle acknowledged that this evidence "starts to sound like propensity," he claimed he sought to introduce it for non-propensity purposes. He argued he would use the underlying facts from these charges to establish how Hardy's long and adversarial relationship with law enforcement had developed into a modus operandi of carrying guns and running from police when confronted. He claimed this could lead the jury to believe Hardy was in sole possession of the firearm. He also argued the evidence would tend to prove Hardy's knowledge that the firearm was in the car, intent to possess the weapon, and familiarity with handling and operating handguns.

---

[2]See United States v. Myers, 589 F.3d 117, 123 (4th Cir. 2009); United States v. Montelongo, 420 F.3d 1169, 1174 (10th Cir. 2005); United States v. Seals, 419 F.3d 600, 606 (7th Cir. 2005); United States v. Lucas, 357 F.3d 599, 605 (6th Cir. 2004); United States v. Hamilton, 48 F.3d 149, 155 n. 8 (5th Cir. 1995); United States v. Spencer, 1 F.3d 742, 750 n.5 (9th Cir. 1992) (Reinhardt, J., dissenting); United States v. Stevens, 935 F.2d 1380, 1401-02 (3d Cir. 1991).

If the party introducing 404(b) evidence demonstrates a non-propensity purpose for the evidence, it is admissible if it is: "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005). "The requirement to balance probative value and prejudice is found in Rule 403." United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006). Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. We have not had occasion to rule on the admissibility of reverse 404(b) evidence. Battle suggests we should consider the usual 404(b) factors, but with less concern for prejudice because evidence offered against someone other than the defendant does not raise a risk of prejudicing the jury against the defendant. He notes the district court must still weigh other Rule 403 considerations, such as whether the evidence will mislead the jury or waste time. Assuming without deciding that Battle's suggested method of analysis is correct, we find the district court did not abuse its discretion in excluding this evidence.

Battle advanced two primary theories for the evidence's non-propensity purpose: (1) modus operandi and (2) knowledge and intent. The district court considered each of Hardy's prior convictions and found that neither theory demonstrated how the evidence was relevant to any material issue at trial. Battle's motion and appeal focus on admitting this evidence to show Hardy's modus operandi of carrying guns and running from police. The generic nature of this theory is insufficient to prove modus operandi. See United States v. Carroll, 207 F.3d 465, 468 (8th Cir. 2000). A viable modus operandi theory must show a pattern of behavior that is "sufficiently idiosyncratic" to make the acts "clearly distinctive" from other instances of the same criminal behavior. Id. Absent this distinctiveness, "evidence

-10-

of the prior crime is 'nothing more than the character evidence that Rule 404(b) prohibits.'" Id. (quoting United States v. Smith, 103 F.3d 600, 603 (7th Cir. 1996)). A history of running from police when confronted, sometimes while carrying a weapon, does not meet this high bar. And the district court noted that even if this could establish a modus operandi, it would not be relevant to proving or disproving Battle's knowing possession of the firearm.

On knowledge and intent, the court found the bulk of the convictions and underlying facts and circumstances were also irrelevant to any issue at trial. It noted that Hardy's felon-in-possession conviction may have been admissible if he had testified he had never owned a handgun or was not familiar with handling or operating firearms, but it was otherwise not clearly relevant because his knowledge and familiarity with handguns was not at issue. As the government agreed that Hardy knew the gun was in the car and intended to jointly possess it with Battle, the court was correct in determining that evidence of Hardy's past possession of weapons was not relevant to the issue of Battle's knowing possession of this firearm. See United States v. Turner, 583 F.3d 1062, 1066 (8th Cir. 2009) (prior bad act evidence regarding knowledge and intent is relevant and admissible when state of mind is at issue); United States v. Strong, 415 F.3d 902, 905 (8th Cir. 2005) (a party's knowledge and intent are material issues where he asserts he was merely present and did not know about the firearm).

The court then considered the risk of distraction and waste of time arising from the presentation of this evidence and decided it substantially outweighed any minimal probative value the evidence may have offered. See Fed. R. Evid. 403. We give great deference to the district court's Rule 403 determinations. United States v. Halk, 634 F.3d 482, 488 (8th Cir. 2011). Battle sought admission of a package of 404(b) evidence, which he indicated he would have introduced by eliciting testimony from Hardy on detailed fact patterns surrounding a variety of convictions and dismissed charges and then "refresh[ing] his recollection" with police reports where needed.

The court noted this raised evidentiary concerns, as Battle did not point to other evidence he could introduce, and use of police reports to prove the facts underlying an arrest can present difficult hearsay and reliability issues. See Cook, 454 F.3d at 942; United States v. Bell, 785 F.2d 640, 644 (8th Cir. 1986). The court stated this would be a "considerable undertaking" and that it would not "retry or try Mr. Hardy for each of these offenses in the middle of trial" because it would "prolong the trial unnecessarily, and wouldn't lead to any evidence that would be particularly relevant to the issue of whether Mr. Battle knowingly possessed a firearm on the day in question." Even granting that admission of this evidence would not pose the same risk of prejudice to defendant's character as regular 404(b) evidence, the court still had discretion to exclude it based on its Rule 403 weighing. See Clark v. Martinez, 295 F.3d 809, 814 (8th Cir. 2002) (evidence that would otherwise be admissible under Rule 404(b) still has to meet the requirements of Rule 403). As Battle focused on introducing the entire package of 404(b) evidence, the court did not abuse its discretion in examining the evidence as a whole and determining that any minimal probative value it may have possessed was outweighed by the risk of distraction in conducting mini trials on the detailed facts underlying the long string of offenses Battle sought to introduce. See Cook, 454 F.3d at 941-42. In these circumstances, we find the district court did not abuse its discretion in excluding this evidence and "'focusing the trial on the offense at issue.'" Id. at 942 (quoting United States v. Perkins, 937 F.2d 1397, 1401 (9th Cir. 1991)).

## IV. Judicial Immunity

Battle argues the district court erred in refusing to grant judicial immunity to Marshall so he could testify about drugs and a firearm magazine he said he recovered when he retraced Hardy's steps the day after their arrest. "Judicial immunity is a concept that comes from case law holding that a court has inherent authority to grant use immunity to witnesses, in the absence of a government request, to secure essential exculpatory testimony." United States v. Campbell, 410 F.3d 456, 464 (8th Cir.

-12-

2005). There is no clear standard of review for a denial of judicial immunity because the Eighth Circuit has not recognized the concept of judicial immunity. See id.; United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003). Thus we find no error in the court's refusal to grant judicial immunity to Marshall. Washington, 318 F.3d at 856.

## V. Motion for Acquittal

Battle contends that the district court erred in refusing to grant his motion for acquittal based on insufficient evidence. We review the denial of a motion for judgment of acquittal de novo, evaluating "the evidence in the light most favorable to the government and draw[ing] all reasonable inferences in its favor." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). "'We reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" Id. (quoting United States v. Frank, 354 F.3d 910, 916 (8th Cir. 2003)).

As noted previously, the government only had to prove Battle knowingly possessed the firearm. It could do so by showing "he had actual or constructive possession of the firearm, and possession of the firearm could have been sole or joint." Walker, 393 F.3d at 846-47. Constructive possession can be proved by showing "'control, ownership, or dominion over the firearm itself'" or the premises where it is found. Id. at 847 (quoting Boykin, 986 F.2d at 274). A defendant's prior use of a firearm is probative of his ownership and control of that weapon and thus probative of his later possession. Flenoid, 415 F.3d at 977. Circumstantial evidence, such as the location of the firearm when it is found or the defendant's deceitful behavior during questioning, is also probative of possession. United States v. Bradley, 473 F.3d 866, 868 (8th Cir. 2007); Walker, 393 F.3d at 847.

The government's evidence of the position of the firearm when it was found, Battle's previous possession of the firearm, and his dishonesty with officers was

-13-

sufficient proof for a reasonable jury to find beyond a reasonable doubt that Battle knowingly possessed the firearm in Waterloo. The firearm was found directly underneath Battle's seat. See Walker, 393 F.3d at 847 (location of firearm under defendant's seat was evidence of his possession). Police testified the gun's position under the front seat was consistent with placement from the front and it would have been difficult or impossible for someone to place it under the seat from the rear. The photographs showed that debris on the floor of the backseat and tubing underneath the front seat would have obstructed Hardy's access to the firearm from the backseat. The Des Moines shooting evidence indicated Battle's prior ownership or control over the firearm, which supported a finding that he possessed that same firearm just five weeks later. See Adams, 604 F.3d at 599; Flenoid, 415 F.3d at 977. While Battle contests the credibility of the witnesses identifying him as the shooter, "[t]he jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict." United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010). Investigators testified that Battle lied to them on multiple occasions, giving inconsistent accounts during the Waterloo incident and denying he was involved in jail phone conversations with Hardy and that he used the nickname "DV." The jury could reasonably find Battle's dishonesty incriminating. See United States v. Chatmon, 742 F.3d 350, 353 (8th Cir. 2014) (jury could infer that lying indicated consciousness of guilt); Walker, 393 F.3d at 847 (lying supported knowing possession of a firearm). Taken together, this evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Battle knowingly possessed the firearm.

## VI. Sentencing Enhancement

Battle challenges the court's application of a four-level sentencing enhancement for use of a firearm in the Des Moines shooting. A defendant's base offense level is increased by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." USSG

-14-

§ 2K2.1(b)(6)(B). The court applied the enhancement after finding by a preponderance of the evidence that Battle committed the Des Moines shooting. Battle claims the court erred in making this finding itself rather than submitting it to the jury. He argues that Supreme Court precedent requires that facts which increase the penalty for a crime should be submitted to a jury and found beyond a reasonable doubt. See Alleyne v. United States, 133 S. Ct. 2151 (2013); Apprendi v. New Jersey, 530 U.S. 466 (2000). He also argues the evidence was insufficient to support application of the enhancement.

"We review de novo the 'legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory guidelines range . . . while the factual findings underpinning the enhancement are reviewed for clear error.'" United States v. Butler, 594 F.3d 955, 965 (8th Cir. 2010) (quoting United States v. Septon, 557 F.3d 934, 936 (8th Cir. 2009)). In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In Alleyne, the Court extended Apprendi to hold that facts which increase a defendant's mandatory minimum sentence must also be submitted to the jury. 133 S. Ct. at 2155. "Regarding whether a jury is required, application of a statutory maximum or minimum are to be distinguished from 'factfinding used to guide judicial discretion in selecting a punishment within limits fixed by law.'" United States v. Davis, 753 F.3d 1361, 1361-62 (8th Cir.) (per curiam) (quoting Alleyne, 133 S. Ct. at 2161 n.2), cert. denied, 135 S. Ct. 393 (2014). In applying the section 2K2.1(b)(6)(B) enhancement, the court neither exceeded the statutory maximum nor increased a statutory mandatory minimum. See 18 U.S.C. § 924(a)(2) (no statutory mandatory minimum for possession of firearm as a felon). Thus the court did not err in conducting its own fact-finding for the purposes of applying the enhancement. Davis, 753 F.3d at 1362.

-15-

The section 2K2.1(b)(6)(B) enhancement applies if a firearm facilitated another felony offense, which the Guidelines define as an offense "punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1, comment. (n. 14(A), (C)). If the court "properly treat[s] the Guidelines range as advisory, [it is] free to consider any sentencing facts supported in the record by a preponderance of the evidence in setting [a] sentence, subject only to the statutory maximum and the guiding factors in § 3553(a)." United States v. Wade, 435 F.3d 829, 831-32 (8th Cir. 2006) (per curiam). We give great deference to the court's factual findings in support of a sentence. United States v. Brown, 539 F.3d 835, 839 (8th Cir. 2008). The district court found by a preponderance of the evidence that Battle committed the Des Moines shooting. Clear ballistics evidence showed that the gun used in the shooting was the same one found under Battle's seat just five weeks later. One eyewitness identified Battle as the shooter and another gave a description of the shooter that matched Battle. Given that other eyewitnesses gave conflicting testimony, the court was required to weigh witness credibility and decide which accounts were reliable. "Credibility determinations are squarely within the discretion of the district court" and are given special deference. United States v. Peck, 161 F.3d 1171, 1174 (8th Cir. 1998); see also United States v. Goodale, 738 F.3d 917, 923 (8th Cir. 2013), cert. denied, 134 S. Ct. 2856 (2014). Given this evidence and the deference afforded the district court's credibility findings, we conclude there was sufficient evidence to support the sentencing enhancement and the court did not err in applying it.

## VII. Downward Variance

Finally, Battle claims his sentence was unreasonable because the court denied his motion for downward sentencing variance. "'We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard.'" United States v. Martinez, 557 F.3d 597, 599 (8th Cir. 2009) (quoting United States v. Pepper, 518 F.3d 949, 951 (8th Cir. 2008)). Battle argues his

sentence should have been reduced to avoid disparities with Hardy and Marshall's punishments. One of the section 3553(a) factors that courts are to consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). It is unclear whether Battle is claiming the court committed procedural error by failing to adequately consider section (a)(6) or substantive error by considering but improperly weighing (a)(6). Either way, we do not find the court abused its discretion. The district court considered all of the section 3553(a) factors, including (a)(6). A court does not abuse its discretion if it refuses to vary downward to avoid sentencing disparities where the defendant is not similarly situated to the other defendants in question. See United States v. Brunken, 581 F.3d 635, 638 (8th Cir. 2009). Section 3553(a)(6) only applies to disparities among federal defendants. United States v. Jeremiah, 446 F.3d 805, 807-08 (8th Cir. 2006). Marshall and Hardy were not prosecuted in federal court. Thus they were not similarly situated to Battle and we find the district court did not abuse its discretion in refusing to vary downward.

## VIII. Conclusion

Having reviewed the record carefully, and having considered all of the arguments on appeal, we find no basis for reversal. Thus we affirm Battle's conviction and sentence.

_____