# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1340

_____

United States of America

*Plaintiff - Appellee*

v.

Timothy Kenneth White Plume

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 21, 2016
Filed: February 2, 2017

_____

Before RILEY, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Timothy Kenneth White Plume of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(a)(6), and child abuse in violation of 18 U.S.C. § 1153 and South Dakota Codified Laws §§ 26-10-01 and 26-8A-2(3) and (6). White Plume asserts: (1) insufficiency of the evidence, (2) abuse of discretion in excluding evidence of past child abuse by his wife, and (3)

precluding confrontation about his wife's past child abuse. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

On the afternoon of December 8, 2012, White Plume was at home with his wife Natalie and her infant grandson, L.L. Natalie was baking in the kitchen. White Plume was watching television with L.L. in the bedroom. Later that afternoon, White Plume became angry and visibly upset after Natalie accused him of infidelity. Shortly after 4:30 p.m., White Plume came out of the bedroom holding L.L., concerned something was wrong.

L.L. suffered significant, acute head trauma and a leg fracture. The complex skull fractures were caused by force like a fall from a roof to a concrete surface. L.L.—now blind, deaf, and severely cognitively impaired—has little chance of ever walking or talking.

White Plume initially denied responsibility. He suggested that a skin bump on L.L.'s head may have been responsible. Later, he said Natalie had dragged L.L. across the bed by his leg. White Plume eventually said he picked up and threw down the bed in anger, causing L.L. to fall off. White Plume, in a note for officers, apologized for what happened to L.L. At trial, he testified he never saw L.L. fall off the bed, instead claiming to black out shortly after arguing with Natalie. The next thing he remembered was standing in the bedroom with the box spring on top of his foot, with L.L. on the ground making a "gurgling" sound.

During a pre-trial conference editing the transcript of an audio recording of White Plume's polygraph, he objected to the removal of this exchange with officers:

Q: Did the children or have your children been taken away from you? None of Natalie's children have been taken away before.

A: Yeah, her son did.

Q: Okay. For what reason?

A: For her child abuse.

Q: What did she do?

A: Started spanking him; spanking is not legal.

White Plume pointed to evidence that Natalie spent three days in tribal jail for abuse. The district court[1] excluded the exchange and anything about Natalie's abuse as propensity evidence barred by Federal Rule of Evidence 404(b). The court precluded any cross-examination of Natalie about her prior child abuse.

II.

White Plume challenges the sufficiency of the evidence. This court, on de novo review, views "the evidence in a light most favorable to the verdict and accept[s] all reasonable inferences supporting the verdict." *United States v. Jenkins*, 792 F.3d 931, 934 (8th Cir. 2015). This court reverses "only if no reasonable jury could have found guilt beyond a reasonable doubt." *United States v. Gray*, 700 F.3d 377, 378 (8th Cir. 2012). A "verdict may be based in whole or in part on circumstantial evidence." *United States v. White*, 794 F.3d 913, 918 (8th Cir. 2015).

White Plume agrees the injuries were severe, acute, and non-accidental. Most of his accounts include harming L.L. White Plume's and Natalie's testimony puts

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

White Plume alone with L.L. immediately before the injury. A drastic change in a child's condition while alone with the defendant sufficiently supports an inference of the defendant's guilt. *Id.* at 919-20. *See United States v. Iron Hawk*, 612 F.3d 1031, 1037 (8th Cir. 2010) (holding a non-accidental, acute injury during defendant's sole custody was sufficient to support conviction); *United States v. Red Bird*, 450 F.3d 789, 793 (8th Cir. 2006) (same).

White Plume's apology note supports his guilt, as does his statement he was not blaming Natalie for L.L.'s injuries. His inconsistent accounts—different roles, none explaining L.L.'s injuries—support an inference that he was "seeking to develop an explanation to cover up [his] own misconduct in causing injury to [L.L.]" *See id.* *See also White*, 794 F.3d at 921.

The evidence sufficiently supports the verdicts.

## II.

White Plume challenges excluding evidence of Natalie's prior child abuse. He claims it was *res gestae* and reverse 404(b) evidence. This court reviews a "district court's evidentiary rulings for clear abuse of discretion." *United States v. Webster*, 797 F.3d 531, 537 (8th Cir. 2014).

White Plume wanted to introduce the exchange with officers about Natalie's prior child abuse. He offered tribal records of the abuse and a court order that Natalie take anger-management classes. The Government countered with evidence that White Plume was involved in the abuse. White Plume also sought to introduce a tribal child-welfare-agency report that neighbors had seen and heard other abuse of Natalie's son. The Government countered with a different report suggesting White Plume was involved in a yet another incident of neglect.

A.

*Res gestae*, or intrinsic evidence, is "evidence of wrongful conduct other than the conduct at issue . . . offered for the purpose of providing the context in which the charged crime occurred." **United States v. Campbell**, 764 F.3d 880, 888 (8th Cir. 2014). It is not governed by Rule 404(b), but is admissible because it "completes the story or provides a total picture of the charged crime." **United States v. Brooks**, 715 F.3d 1069, 1076 (8th Cir. 2013) (holding cell-phone videos and photos of defendant were intrinsic because they showed the cell phone belonged to defendant, linking him to the stolen vehicle where the cell phone was found). *See* **United States v. Payne-Owens**, No. 15-3445, 2017 WL 31425, at *2 (8th Cir. Jan. 4, 2017) (holding a hand gesture and slang words on Facebook were intrinsic, providing the total picture of unlawful possession of a firearm).

White Plume argues the prior child-abuse evidence is *res gestae*, giving context to the history of abuse in the household and to older injuries to L.L. (when White Plume may not have been at home).

Natalie's prior child abuse did not involve L.L. The force causing the other injuries is not consistent with the charged crime. White Plume testified he had never seen Natalie hurt L.L. The prior child-abuse evidence does not "tend[] logically to prove any element of the crime charged," so it is not "an integral part of the immediate context of the crime charged." *See* **United States v. Cook**, 842 F.3d 597, 601 (8th Cir. 2016).

B.

Evidence of prior acts "may be admissible for another purpose [other than propensity], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." **Fed. R. Evid. 404(b)(2)**. White Plume proffers reverse 404(b) evidence "introduced by the

defendant and offered to implicate [a] third party in the charged crime." ***United States v. Battle***, 774 F.3d 504, 512 (8th Cir. 2014).

White Plume cannot establish the required non-propensity purpose. He argues that Natalie's prior acts are relevant to the question "which of the two adults in the household committed that criminal acts of felony assault and child abuse against Natalie White Plume's grandson, L.L." White Plume says the prior acts show "it was more likely that Natalie White Plume" committed the crime. As the district court found, this evidence seeks to establish that because Natalie had abused a child before, she was more likely to abuse L.L. on December 8. This is propensity evidence barred by Rule 404(b). *See **id.*** at 513 (holding "non-propensity purpose" required for admissibility under Rule 404(b)).

White Plume claims the evidence shows Natalie's state of mind, specifically her intent and motive. But, Natalie's state of mind was not at issue. Whoever committed the crime intended to do it. Evidence of prior acts establishing intent is admissible when a party "places his state of mind at issue," ***United States v. Turner***, 583 F.3d 1062, 1066 (8th Cir. 2009), but not admissible when "intent [is] not a serious issue." ***United States v. LeCompte***, 99 F.3d 274, 279 (8th Cir. 1996).

White Plume asserts that the evidence shows Natalie's motive, when overwhelmed by childcare, to abuse young children in the household. There was no showing she was angry or overwhelmed on December 8. Any connection between the past acts and L.L.'s injuries is speculative. Because there were conflicting accounts whether White Plume was involved in the prior child abuse, with both parties alleging additional abuse, the district court did not abuse its discretion by "focusing the trial on the offense at issue." ***Battle***, 774 F.3d at 514 (finding no abuse of discretion due to potential for distraction "in conducting mini trials on the detailed facts" of offenses sought to be introduced, compared to their low probative value). *See **United States v. Condon***, 720 F.3d 748, 755 (8th Cir. 2013) (stating a district

court has considerable discretion in "determining whether proffered evidence is misleading or confusing").

According to White Plume, the evidence shows the identity of the abuser. The similarity standard for identity requires a "much greater degree of similarity between the charged crime and the uncharged crime . . . than when it is introduced to prove a state of mind." *LeCompte*, 99 F.3d at 278. The charged crime and the prior abuse involve different victims, different injuries, and different degrees of severity. That they are both child abuse does not show they were carried out in an "unusual and distinctive manner." *See id. See also Battle*, 774 F.3d at 513 (running from officers when confronted and carrying a weapon is too generic for *modus operandi*); *United States v. Carroll*, 207 F.3d 465, 469 (8th Cir. 2000) (that "the perpetrator wore a nylon stocking mask, carried a gun, and vaulted over the counter" in two bank robberies was not sufficiently similar for an identity argument). The district court did not abuse its discretion in excluding the prior-acts evidence.

III.

The court did not allow White Plume to cross-examine Natalie about her prior child abuse. He asserts a violation of the Confrontation Clause. This court reviews "evidentiary rulings regarding the scope of a cross examination for abuse of discretion, but where the Confrontation Clause is implicated, we consider the matter de novo." *United States v. Williams*, 796 F.3d 951, 960 (8th Cir. 2015). The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Jasso*, 701 F.3d 314, 316 (8th Cir. 2012) (emphasis in original), *quoting Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). District courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . prejudice, confusion of the issues . . . or interrogation that is repetitive or

only marginally relevant." ***United States v. Dale***, 614 F.3d 942, 956 (8th Cir. 2010), *quoting* **Delaware v. Van Arsdall**, 475 U.S. 673, 679 (1986).

White Plume argues that the proposed cross-examination impeaches Natalie's credibility by showing she dealt with stress by becoming violent and wanted to shift the blame for L.L.'s injuries to White Plume. As discussed, the prior child abuse has little, if any, probative value. White Plume did not show she was overwhelmed by childcare on December 8, providing only speculation to connect the incidents. *See* **Williams**, 796 F.3d at 961 (preventing cross-examination on a speculative theory of bias with no good-faith basis is not an abuse of discretion). The district court properly weighed the low probative value against the potential confusion of the issues. *See* **Condon**, 720 F.3d at 755 ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.").

White Plume believes he was completely precluded from impeaching Natalie for bias. *See* **Van Arsdall**, 475 U.S. at 679. In fact, White Plume cast doubt on her credibility many ways. He examined her about her recent conviction for making a false statement to the government. He also highlighted several inconsistencies in her testimony, including her denial to officers of any argument on December 8 and her changing story whether White Plume helped in the kitchen. *See* ***United States v. Drapeau***, 414 F.3d 869, 876 (8th Cir. 2005) (holding no Confrontation Clause violation in limiting cross-examination because the witness's credibility was still challenged). The district court's limit on Natalie's cross-examination was reasonable. There was no Confrontation Clause violation.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____