# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3642

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Mathis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 28, 2018
Filed: December 27, 2018

_____

Before SMITH, Chief Judge, MELLOY and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

Richard Mathis challenges the 80-month sentence he received after pleading guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). He specifically challenges the district court's[1]

---

[1] The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

finding that he used a firearm to facilitate the crime of harboring a runaway. Based on this finding, the district court imposed a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). The court also varied upward. On appeal, Mathis argues the district court abused its discretion in imposing the four-level sentencing enhancement. He claims the district court erred in finding by a preponderance of the evidence that he had harbored a runaway and had used or possessed a firearm to facilitate that crime. Mathis also argues the district court abused its discretion in varying upward.

I. *Background*

Mathis picked up a 15-year-old boy, K.G., from school and drove him to Mathis's house in Atallisa, Iowa. Mathis had met K.G. on a website called "Meetme.com," and Mathis had invited K.G. to come stay with him. An investigation of Mathis's online activity revealed frequent, sexually explicit communication with young males in which Mathis promised to provide them with a place to live, a car, and a job if they moved.

On February 15, 2013, K.G.'s mother reported him missing. Investigators tracked K.G. to Mathis's home by "pinging" his cell phone, and on February 25, police questioned Mathis's roommate, Wanda Gott, outside their residence. Gott claimed no minors were inside the house. In fact, K.G. had been inside the house with Mathis during the questioning. Gott later admitted knowing that K.G. was inside and that he was a runaway.

About two weeks after the police visit to his home, Mathis took K.G. to K.G.'s grandmother's house in Cedar Rapids, Iowa. Once home, K.G. claimed Mathis had molested him and threatened him with a gun. Specifically, K.G. claimed Mathis had pointed a gun at him; he later retracted that statement but consistently maintained

there had been guns inside the house, including a rifle near the front entrance.[2] K.G. also described other threatening behaviors by Mathis and Gott to investigators. He claimed Gott made large dogs lie in front of his bedroom door to prevent him from leaving the house. Gott admitted that she did so. K.G. also claimed Mathis bragged about beating people up in prison.

K.G. further told investigators that Gott discovered he was actually only 15 years old and that Mathis also found out he was underage from Gott, who had viewed him on a missing persons website. K.G. claimed Mathis made him take the battery out of his cell phone when he learned his actual age. K.G. also described an incident in which Mathis told him to duck down as they drove across the Illinois state line to visit a friend. According to K.G., Mathis feared he would get in trouble for taking K.G. out of state.

On March 8, officers obtained a warrant to search Mathis's house. The search uncovered a rifle near the front entrance, just as K.G. had described. Mathis admitted K.G. stayed at his house, but he claimed he believed K.G. was 19.

The State of Iowa charged Mathis with harboring a runaway and being a felon in possession of a firearm. Those charges were later dismissed. The federal government charged Mathis with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). In January 2014, Mathis pleaded guilty to the possession charge and was sentenced to 180 months' imprisonment. We affirmed the sentence. *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015).

The Supreme Court reversed this court's judgment, *Mathis v. United States*, 136 S. Ct. 2243 (2016), and we remanded the case to the district court for

---

[2] K.G. was charged with making a false report to law enforcement because of these inconsistencies.

resentencing. *United States v. Mathis*, 832 F.3d 876 (8th Cir. 2016). The presentence investigation report (PSR) prepared for Mathis's 2017 resentencing indicated a base offense level of 20, with a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with another felony offense, *i.e.*, in connection with harboring a runaway. Accounting for acceptance-of-responsibility reductions, the PSR thus calculated a total offense level of 21. Based on a criminal history category of IV and an offense level of 21, the PSR recommended an imprisonment range of 57–71 months.

At resentencing, the district court found by a preponderance of the evidence that Mathis had committed the crime of harboring a runaway and had used or possessed a firearm to facilitate that crime. The district court thus adopted the PSR's recommended four-level enhancement. The court also varied upward from the Guidelines range, imposing a sentence of 80 months.

## II. *Discussion*

On appeal, Mathis argues the district court abused its discretion in imposing the four-level sentencing enhancement. He claims the district court erred in finding by a preponderance of the evidence that he had both harbored a runaway and had used or possessed a firearm to facilitate that crime. Mathis also argues the district court abused its discretion in varying upward.

## A. *Sentencing Enhancement*

The Guidelines call for a four-level sentencing enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). This enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* § 2K2.1 cmt. n.14(A). "'Another felony offense' . . . means any federal,

state, or local offense . . . punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought, or a conviction obtained.*" *Id.* § 2K2.1 cmt. n.14(C) (emphasis added). Mathis agrees that harboring a runaway qualifies as a felony offense for § 2K2.1(b)(6)(B) purposes, but he denies having committed the offense or having used his firearm "in connection with" that offense.

## 1. *Harboring a Runaway*

"In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony." *United States v. Littrell*, 557 F.3d 616, 617 (8th Cir. 2009) (quoting U.S.S.G. § 2K2.1 cmt. n.14(A)). Mathis was never convicted of harboring a runaway under Iowa law because the charge was dismissed. The district court was required, therefore, to find that Mathis had in fact harbored a runaway by a preponderance of the evidence.

Iowa law prohibits "harbor[ing] a runaway child with the intent of committing a criminal act involving the child or with the intent of enticing or forcing the runaway child to commit a criminal act," or "harbor[ing] a runaway child with the intent of allowing the runaway child to remain away from home against the wishes of the child's parent, guardian, or custodian." Iowa Code § 710.8(2), (3). Iowa law defines a "[r]unaway child" as "a person under eighteen years of age who is voluntarily absent from the person's home without the consent of the person's parent, guardian or custodian." *Id.* § 710.8(1)(c). To be guilty of harboring a runaway child, the defendant must either provide "aid, support, or shelter" to the runaway. *See id.* § 710.8(1)(b).

The district court's finding that Mathis knowingly harbored a runaway child is a question of fact, which we review for clear error. *See United States v. Woods*, 596 F.3d 445, 447 (8th Cir. 2010). A district court may conduct its own fact-finding and

-5-

evidence-gathering to determine if an enhancement applies. *United States v. Battle*, 774 F.3d 504, 516 (8th Cir. 2014). Moreover, a district court is entitled to "special deference" in its credibility determinations. *Id.* at 517; *see also Woods*, 596 F.3d at 448 (deferring to district court's credibility determination where the district court based a sentencing enhancement on statements made by defendant's girlfriend to an officer who testified at trial).

Here, the district court based its finding that Mathis had harbored a runaway child on information contained in the PSR that was later corroborated at sentencing by the investigating officers. According to the officers, Gott told them K.G. was at Mathis's house when police first came to look for him. She represented that she did not know K.G.'s actual age until she discovered it on a missing persons website. Gott admitted that she placed dogs in front of K.G.'s room to prevent him from leaving. Officers also testified that K.G. told them Mathis learned from Gott that K.G. was being sought as a missing person. K.G. also told officers that once Mathis learned his actual age, he made him remove the battery from his cell phone. K.G. also related that Mathis had expressed concern about driving K.G. across state lines because of his age. Lastly, Mathis himself admitted that K.G. stayed at his house. Based on the corroborated allegations in the PSR, the district court had sufficient evidence to conclude that Mathis knew K.G. was both a minor and a runaway and harbored him in violation of Iowa law.

2. *Using or Possessing a Firearm in Connection with Another Felony*

Before applying an § 2K2.1(b)(6) enhancement, the district court must find by a preponderance of the evidence that the defendant used or possessed a firearm to facilitate the commission of felony. *See Littrell*, 557 F.3d at 617. We have held that "the enhancement is inapplicable if a firearm was present at the crime scene due to 'mere accident or coincidence.'" *United States v. Mangum*, 625 F.3d 466, 467 (8th Cir. 2010) (quoting *United States v. Guiheen*, 594 F.3d 589, 591 (8th Cir. 2010)). However, "where a defendant keeps a firearm 'at an easily accessible location' while

committing a felony offense, a sentencing court may infer that the firearm 'emboldened the defendant to engage in the illegal act.'" *Id.* at 467–68 (quoting *Guiheen*, 594 F.3d at 591).

A defendant need not have initially intended to use the firearm to facilitate another felony. "[W]here a defendant keeps a firearm 'at an easily accessible location' while committing a felony offense," *id.* at 467 (quoting *Guiheen*, 594 F.3d at 591), "with knowledge . . . or reason to believe that" such firearm was facilitating the commission of that felony, U.S.S.G. § 2K2.1(b)(6)(B), then that defendant cannot escape the enhancement merely by claiming he did not subjectively intend to use or possess the weapon to facilitate another felony.

Whether Mathis used or possessed his firearm to facilitate harboring K.G. is a question of fact subject to review for clear error. *See Littrell*, 557 F.3d at 617. The district court in this case heard testimony from officers that Mathis kept a gun in open sight, and that K.G. was intimidated by the gun, as well as by Mathis's criminal past. Upon searching Mathis's home, investigators found a gun matching the description that K.G. supplied.

In light of this evidence, we cannot say the district court clearly erred in finding that "the presence of the firearm, the presence of the dogs, [Mathis's] past criminal history all made known to [K.G.] or was intimidating to the victim, and therefore it both facilitated and obviously had the potential to facilitate the offense." Tr. of Resentencing Hrg. at 51–52, *United States v. Mathis*, No. 3:13-cr-00033-JAJ-HCA-1 (S.D. Iowa Nov. 21, 2017), ECF No. 115.

K.G.'s testimony about Mathis's use of the gun was not unequivocal, but the officers' testimony at trial provided the needed evidentiary preponderance to support a finding that the enhancement applies. In applying the enhancement, the district court necessarily deemed the officers' testimony—and by extension, K.G.'s

testimony—credible. "A district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." *Woods*, 596 F.3d at 448 (citation ommited). We thus find the district court had sufficient evidence to conclude that Mathis used a firearm to facilitate harboring a runaway.

We hold the district court did not err in applying the § 2K2.1(b)(6) enhancement.

### B. *Upward Variance*

Mathis claims the court abused its discretion in varying upward. We disagree. The PSR established a sentencing range of 57–71 months. At resentencing, the government requested a sentence of 84 months, but the district court imposed an 80-month sentence.

We may not presume a sentence outside the Guidelines to be unreasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). An appellate court may consider the extent of the deviation from the Guidelines, but it may not require "extraordinary circumstances to justify a sentence outside the Guidelines." *United States v. Thorne*, 896 F.3d 861, 866 (8th Cir. 2018) (cleaned up). While a district court must explain its basis for varying from the Guidelines, it may consider factors already taken into account by the Guidelines in explaining its variance. *Id.* at 865. Specifically, it may consider factors under 18 U.S.C. § 3553(a), such as an offender's criminal history, his likelihood of recidivism, and his threat to the public. *Id.* "If the court 'properly treat[s] the Guidelines range as advisory, [it is] free to consider any sentencing facts supported in the record by a preponderance of the evidence in setting [a] sentence, subject only to the statutory maximum and the guiding factors in § 3553(a).'" *Battle*, 774 F.3d at 516 (alterations in original) (quoting *United States v. Wade*, 435 F.3d 829, 831–32 (8th Cir. 2016) (per curiam)).

The district court considered Mathis's extensive criminal history[3] and cited protecting the public as justification for an upward variance. Mathis disputes this rationale, arguing that the variance "could only be based on . . . unproven allegations" because the Guidelines range already accounted for his record. Appellant Br. at 23. This argument misunderstands our law. Not only may a district court consider factors already accounted for by the Guidelines in imposing a sentence, but it may also consider facts supported by a preponderance of the evidence—whether or not those facts were proven in the form of a conviction. *See Thorne*, 896 F.3d at 865; *Battle*, 774 F.3d at 516.

In light of the evidentiary record and our deferential abuse-of-discretion standard in reviewing sentences, we hold the district court did not err in varying upward.

### III. *Conclusion*

Having considered all of the arguments on appeal, we find no basis for reversal. Accordingly, we affirm the judgment of the district court.

—————————————————

[3] Mathis's PSR detailed a decades-long history of criminality, beginning with a burglary conviction in 1980. In total, the PSR indicated 18 separate criminal convictions, and 9 arrests not resulting in conviction. Notably, Mathis was arrested for "lascivious acts with a child" in 1986. Mathis's prior convictions included assaults, burglaries, thefts, multiple instances of disturbing the peace and criminal mischief, trespass, false use of a financial instrument, escape, and reckless driving.