# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3213

_____

United States of America

*Plaintiff - Appellee*

v.

Damion Lydale Bridgeforth

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 18, 2019
Filed: June 3, 2019
[Unpublished]

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

PER CURIAM.

Damion Bridgeforth appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), alleging the district court[1] erred in

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

denying his motion for judgment of acquittal because there was insufficient evidence to sustain his conviction. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

On October 28, 2015, patrolling North Little Rock Police officer Michael Shahan saw a blue Cadillac run a red light. Shahan attempted a traffic stop but had to accelerate to speeds of 75-85 miles per hour and pass cars on the shoulder of the freeway to keep pace with the car. Eventually, the Cadillac driver lost control of the vehicle and spun out across a median and several lanes of traffic before crashing into a fence. Shahan then observed the driver, later identified as Bridgeforth, flee on foot.

Shahan stayed with the wrecked Cadillac to check for other passengers. No one else was in the car, but on the front floorboard of the driver's seat, Shahan saw a loaded chrome revolver. Mere feet from the car, he found marijuana, a digital scale, and a lunchbox full of fifty small baggies. Two other police officers, Charles Barnes and Patrick Garrett, pursued Bridgeforth on foot into a wooded area near the crash site. After ordering him to the ground at gunpoint, they were able to take him into custody and return him to the car. Shahan searched Bridgeforth and found a baggie of Xanax in his pants pocket. When the officers ran the Cadillac's information, they found the car was registered to Bridgeforth and his mother.

A grand jury charged Bridgeforth with being a felon in possession of a firearm, and the case proceeded to a jury trial. The officers testified for the government, describing the events leading to and following the arrest. The government also called a latent print examiner with the Arkansas State Crime Lab who explained that the Lab could not recover usable prints from the firearm. However, the examiner emphasized that this was not unusual; firearms rarely provide usable prints. DNA testing had not been requested or conducted. At the close of the government's case, Bridgeforth moved for a judgment of acquittal, and the district court overruled the motion.

The defense called Annette Hopkins, Bridgeforth's former girlfriend, to testify. She stated that she occasionally drove Bridgeforth's car, and that, on October 28, she had dropped the car off at Bridgeforth's place of work. She said the revolver was hers, and while she had intended to take it to a pawnshop to sell it because she needed the money, she had forgotten to do so and left the firearm beneath the driver's seat. Hopkins testified that Bridgeforth did not know she had the revolver, let alone that she had left it beneath the seat. She said she had bought the firearm by herself at a gun show, but she did not remember which show and did not have a receipt or any paperwork with the revolver's serial number.

Hopkins gave unclear testimony about an affidavit she had signed six months after the incident, in which she stated the firearm belonged to her. Her story shifted as to whether she had told anyone about the firearm and who had typed the affidavit, though she said a public defender told her to create it. When Bridgeforth's mother testified, she stated that the affidavit had been her idea.

Bridgeforth renewed his motion for judgment of acquittal, and it was again denied. The jury found Bridgeforth guilty, and the district court sentenced him to 108 months imprisonment and 3 years supervised release, with his prison term set to run concurrent to his state sentence. Bridgeforth now appeals, contending that the evidence is insufficient to support his conviction.

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). "The evidence need not exclude every reasonable hypothesis of innocence, and we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses." United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996). Rather, "[r]eversal is appropriate only

where a reasonable jury could not have found all the elements of the offense beyond a reasonable doubt." United States v. Armstrong, 253 F.3d 335, 336 (8th Cir. 2001).

To convict Bridgeforth under § 922(g), the government needed to prove three elements: (1) that Bridgeforth had a previous conviction punishable by a term of imprisonment exceeding one year, (2) that he knowingly possessed the firearm found in the car, and (3) that the firearm had traveled in or affected interstate commerce. See United States v. White, 816 F.3d 976, 985 (8th Cir. 2016). Because Bridgeforth conceded the first and third elements, his trial focused only on his knowledge of the firearm.

"The government can prove knowing possession by showing actual or constructive possession, and possession can be sole or joint." United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014). The government establishes constructive possession by demonstrating that the defendant "has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." Id. (quoting United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993)). "Mere physical proximity to a firearm is not enough to show constructive possession, but knowledge of a firearm's presence, combined with control, is constructive possession." United States v. Mann, 701 F.3d 274, 304-05 (8th Cir. 2012) (internal quotation marks and alterations omitted). Because "a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence, . . . knowledge is generally established through circumstantial evidence." Id. at 305 (internal quotation marks and alterations omitted).

Bridgeforth contends that the government established only his physical proximity to a firearm in a jointly-owned car, not knowing possession. He emphasizes his witnesses' testimony stating that he did not own the revolver as well as the absence of DNA or fingerprint evidence tying him to it. However, Bridgeforth controlled the car just before discovery of the firearm and was the sole occupant at the time. Shahan

found the firearm on the driver's side, in plain view near the seat. Compare United States v. Tindall, 455 F.3d 885, 887 (8th Cir. 2006) (sufficient evidence of knowledge of a firearm where firearm was accessible under passenger's seat and defendant was driver, sole occupant, and co-owner of car), with United States v. Pace, 922 F.2d 451, 452-53 (8th Cir. 1990) (insufficient evidence of knowledge of drugs on driver's part where cocaine was found in passenger's luggage). As a government witness explained, firearms rarely provide fingerprint evidence, and DNA evidence was not requested. Bridgeforth fled the scene, which could lead a jury to reasonably conclude that he was fleeing due to his illegal possession of the firearm. See United States v. Montgomery, 701 F.3d 1218, 1221 (8th Cir. 2012). While it is possible that Bridgeforth may have fled the scene due to the drugs in his pocket or the chase leading to the crash and not the firearm, the jury need not have accepted an alternative explanation. See Anderson, 78 F.3d at 422 ("[W]e may not disturb the conviction if the evidence rationally supports two conflicting hypotheses"). Furthermore, because Hopkins's testimony was inconsistent, the jury could have disbelieved the testimony of both Hopkins and Bridgeforth's mother, and "we have no right to usurp the jury's role to judge the facts and make credibility findings." United States v. Porter, 409 F.3d 910, 915 (8th Cir. 2005). Accordingly, we find there was sufficient circumstantial evidence to sustain Bridgeforth's conviction.

We affirm.

_____